[Crim. No. 3549. Second Dist., Div. Two. May 7, 1942.]

THE PEOPLE, Respondent, v. HAROLD HARBY, Appellant.

760

Arthur E. Briggs, Mark L. Herron and Jerome J. Mayo for Appellant.

Earl Warren, Attorney General, Frank Richards, Deputy Attorney General, John F. Dockweiler, District Attorney, Jere J. Sullivan and D. L. Di Vecchio, Deputies District Attorney, for Respondent.

MOORE, P. J.—Appellant was accused by the Grand Jury of Los Angeles County of having appropriated a city-owned automobile, which had been entrusted to him for his official uses as a city councilman, to a purpose not in the due and lawful execution of his trust. After conviction by a jury, he presented his motion in arrest of judgment. This was denied. Whereupon the court pronounced its judgment removing appellant from office as city councilman and declaring the office then held by him to be vacant. He grounds his appeal upon: (1) the insufficiency of the pleading, (2) the insufficiency of the evidence, (3) errors in giving and refusing instructions.

The specific misfeasance charged was that as such councilman appellant operated and drove the city's Chrysler sedan from Los Angeles to Great Falls, Montana, and return for ''a purpose other than for or upon the official business of the said city of Los Angeles, towit: for the private purpose and upon the private affairs of him, the said Harold Harby'' and that such act was in violation of section 504 of the Penal Code and in violation of section 63.106 of the Municipal Code of the city of Los Angeles.

Defendant was re-elected to the office of city councilman for the eleventh councilmanic district at the primary election held April 1, 1941. July 1 he qualified and was at all times thereafter and until judgment herein a qualified acting member of such city council. Prior to the commencement of his new term, towit, May 19, 1941, by written communication he requested the council to purchase an automobile to replace the old 1937 Studebaker car which he had used in the performance of his official labors. Acting upon such request, the city council purchased the new Chrysler sedan for ''the official''

use of defendant as city councilman and thereafter, on or about June 25, 1941, it was delivered to the city garage. On June 30, 1941, upon his request defendant was granted permission by the city council to be absent from its sessions for a period of two weeks beginning July 7, 1941. On July 3 he requested to be placed on the Chrysler car exempt license plates bearing the number E 19534, which plates had not been issued by the State Motor Vehicle Department for the use of the Chrysler but were taken from a city-owned Pontiac automobile. On the day upon which the license plates were affixed to the sedan, defendant with his wife and a friend departed from the city garage in the new vehicle and directed his course to the city of Great Falls, Montana, where he and his wife had formerly lived and where both had relatives and friends.

Defendant's journey to Montana, including side trips to the Grand Canyon and other places of interest, required him to travel more than 4,000 miles. Upon his return to Los Angeles July 18, the matter of his unauthorized use of the Chrysler for his distant travels became the subject of open discussion at the meetings of the city council. He was charged in a criminal complaint. Subsequently it became the subject of a report by the city attorney in which it was stated that defendant had offered to reimburse the city for all detriment to the sedan resulting from his travels. The extent of the damage was fixed by the bureau of budget and efficiency, computed on a time basis and adjusted to abnormal use in the sum of $122.12. This amount was paid to the city treasurer by appellant after its acceptance was recommended by the finance committee of the city council.

On the day of his second councilmanic induction on July 1, 1941, defendant was appointed chairman of the "Council Parks and Recreation Committee." At no time prior to his departure for Great Falls was he authorized to make an excursion from Los Angeles in order to survey any park or parking system for the benefit of the city. However, on September 3, 1941, defendant presented to the city council a letter in which he stated that, as chairman of his committee, he had been privileged to visit several cities and particularly he had made observations of the parking system of Great Falls which he set forth in his communication. On the same day, the city council adopted a resolution accepting defendant's "report" and declaring that his studies and research with relation to the parking system constituted official business

of the city of Los Angeles. When appellant appeared before the grand jury he testified that on the day of his departure from Los Angeles he had set out on a private trip but that upon his arrival at Great Falls he recalled its fine boulevards and parking system and became interested in trying to solve the problems of his own district and "felt that he would like to duplicate" the parking system of Great Falls in Los Angeles; that thereupon he spent time interviewing people and he inspected the parks of the Montana city.

On October 17, 1940, during appellant's first term as councilman, the city council adopted section 63.106 of the Municipal Code. Subdivision (a) thereof reads as follows: "It shall be unlawful for any person to use or operate any unit of automotive equipment or any autmobile truck or other motor vehicle owned by the city of Los Angeles for any purpose other than for official business of the city of Los Angeles." Defendant stated to the grand jury that he had no recollection of having ever voted on the quoted section; that although he was present at the time of its adoption, he did not recall "it ever coming before us"; that he recalled its first reading but remembered none of its provisions. However, at the same time defendant admitted to the grand jury that during his first campaign for election he had "lambasted" his predecessor for his misuse of city owned automobiles for private purposes and that during the campaign he believed that his predecessor was violating the law by using the city owned car for electioneering purposes. At the trial defendant did not take the witness stand.

 (1) Appellant makes the claim now, as he did below, that the acts alleged to have been willful misconduct, as recited in the pleading, were not alleged to have been done in office; that the pleading is ambiguous and unintelligible; that it alleges that as councilman defendant did willfully, unlawfully, fraudulently and corruptly appropriate the automobile to a use and purpose not in the due and lawful execution of his trust and that he drove the automobile for a purpose other than for and upon the official business of the said city of Los Angeles, to wit, for the private purpose and upon the private affairs of him, the said Harold Harby.[1]

---

[1](Caption omitted)

ACCUSATION WILLFUL MISCONDUCT IN OFFICE

The Grand Jury of the County of Los Angeles, State of California, hereby accuses HAROLD HARBY, as a member of the Common

It will be observed upon an inspection of the accusation which appears on the margin hereof that the facts constituting alleged misconduct are set forth "in ordinary and concise language and without repetition" as required by section 759 of the Penal Code. Section 758 provides that an accusation in writing against any municipal officer for willful or corrupt misconduct in office may be presented by the grand jury of the county of the officer accused. Pursuant to the requirements of section 925, following his indictment, defendant was supplied with a copy of all of the testimony given before the grand jury as well as with a copy of the pleading. By these

Council and City Council of the City of Los Angeles, County of Los Angeles, State of California, of WILLFUL AND CORRUPT MISCONDUCT AND MISDEMEANOR IN OFFICE, committed as follows, to wit:

That the said HAROLD HARBY was, on the first day of April, 1941, elected a member of the Common Council and City Council of the City of Los Angeles for a term of two years, commencing on July first, 1941;

That on said July 1, 1941, the said HAROLD HARBY duly qualified as such City Councilman and he, the said HAROLD HARBY, is now, and at all times since July 1, 1941, has been a duly elected, qualified and acting member of the Common Council and City Council of the said City of Los Angeles, and as such an officer of said City;

That prior to July 3, 1941, and at all times herein mentioned subsequent thereto, the said HAROLD HARBY as such City Councilman had in his possession and under his control as such City Councilman, a certain automobile and motor vehicle owned by said City of Los Angeles for the use of him, the said HAROLD HARBY, as such City Councilman, in and upon the official business of said City;

That between the third day of July, 1941, and the 18th day of July, 1941, the said HAROLD HARBY, as such Councilman, did willfully, unlawfully, fraudulently and corruptly appropriate said automobile to a use and purpose not in the due and lawful execution of his trust, in violation of Section 504 of the Penal Code and in violation of subdivision (a) of Section 63.106 of the Municipal Code of said City of Los Angeles, in that the said HAROLD HARBY did use, operate and drive, and did cause to be used, operated and driven, said automobile and motor vehicle owned by the said City of Los Angeles, as aforesaid, from the said City of Los Angeles to the City of Great Falls, Montana, and return therefrom to said City of Los Angeles, for a purpose other than for or upon the official business of the said City of Los Angeles, to wit, for the private purpose and upon the private affairs of him the said Harold Harby.

Said subdivision (a) of said Section 63.106 reads as follows, to wit: "(a) It shall be unlawful for any person to use or operate any unit of automotive equipment, or any automobile, truck, or other motor vehicle owned by the City of Los Angeles, for any purpose other than for official business of the City of Los Angeles." And which subdivision and section was in full force and effect at all times herein mentioned. (Here follows the names of the witnesses before the grand jury.)

documents he was fully informed as to the character of the charges and made acquainted with the evidence to be used against him at the trial.

The procedure under section 758 does not require the strict application of the rules which govern civil or criminal actions. It is not required that the misconduct charged against an official should necessarily constitute a crime. It is exempt from technical rules of procedure. (*Reid* v. *Superior Court,* 44 Cal. App. 349, 356 [186 Pac. 634].) Willful misconduct in office includes any willful malfeasance, misfeasance or nonfeasance. (*Coffey* v. *Superior Court,* 147 Cal. 525 [82 Pac. 75].) Such official misconduct does not necessarily imply corruption or criminal intention. The officer who, by the exercise of the power of his office, does an act forbidden by a penal statute is guilty of the conduct contemplated by section 758 (*ibid*).

In addition to the charge of violating a city ordinance (§ 63.106) specifically forbidding the unauthorized use of city-owned motor vehicles, defendant was accused of violating a public statute (§ 504, Pen. Code) which renders a person guilty of embezzlement who "fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust any property which he has in his possession or under his control by virtue of his trust. . . ."

The violation of either the ordinance or the statute is, at least, a misdemeanor which betrays, in the heart of the malefactor, a contempt for the law and is therefore sufficient to constitute willful misconduct in office. (*Coffey* v. *Superior Court, supra.*) Consequently, the accusation contains every essential requirement of the law. In the light of the facts revealed by the record appellant's hypertechnical criticism of the pleading is a vain protest against a solemn judgment soberly derived. He entered upon the trial in possession of all available information. At the time of committing his offense he knew of the inhibitions against his making private use of the city's vehicular units and, as an official, he was especially forbidden to make such use thereof. At the trial he stipulated to having committed the act of which he was accused. How then could he have suffered prejudice by reason of any defect in the pleading? His conviction resulted from the proved facts from which it is painfully clear that no injustice has been done. Although it might be conceded, arguendo, that the accusation was insufficient when tested by

special demurrers, yet if the offense was established by abundant evidence, reversal is improper by virtue of section 4½, article VI of the Constitution, and of section 960 of the Penal Code. (*People* v. *Beeseley*, 119 Cal. App. 82, 87 [6 P. (2d) 114, 970]; *People* v. *Hinshaw*, 194 Cal. 1, 23 [227 Pac. 156]; *People* v. *Norton*, 45 Cal. App. (2d) 789 [115 P. (2d) 44].)

▋ (2) Over defendant's objection, the court admitted certain evidence which rulings are assigned as erroneous and prejudicial. In view of appellant's admissions that he had possession of the motor car in his official capacity and that he made private use of it on a pleasure jaunt from Los Angeles to Great Falls, his contentions in the premises are unavailing.

(a) Unquestionably any error in allowing the prosecution to make proof of appellant's request for exempt license plates for the Chrysler sedan was not prejudicial in view of his admission that he used that automobile for his vacation trip to Great Falls. Also it was properly admitted upon the question of appellant's intent at the time of his departure from Los Angeles for Montana. (*People* v. *Lisenba*, 14 Cal. (2d) 403, 430 [94 P. (2d) 569].) For the same reason it was proper to admit the testimony of Constance Sutton to whom appellant stated just prior to his departure that "no one can tell me what to do" after she had inquired whether he would drive the Chrysler or his own Ford car to Montana.

▋ (b) He next complains that his testimony given before the grand jury was erroneously admitted without the corpus delicti of the offense having been established, *aliunde*. But the minutes of the council and appellant's stipulations at the trial proved the corpus delicti: he was a councilman; the new Chrysler car was purchased at his request and turned over to him for his official use; he was granted two weeks vacation; he left for Great Falls without direction to investigate any parks at all; and upon his return, he not only made a report of his unauthorized survey of the parks of Great Falls but after he had made his report and received the thanks of the city council for engaging in his "studies and research" he offered to pay and did pay the city for all detriment it suffered by reason of his unofficial use of the vehicle. He says in his brief that at no time did he attempt to conceal the fact that he had driven the Chrysler to Great Falls. This statement alone in the light of his stipulations could mean nothing less than an admission to this court that he drove the car on his long journey and to places where at

the time and under the circumstances he could perform no official duty. In other words he now establishes the corpus delicti in the same breath in which he asserts that there was no proof of it aside from his testimony before the grand jury. He appeared voluntarily before that body and stated his own version of his travels in order to defeat the charge then under consideration by that tribunal. Having made such voluntary appearance, he assumed the responsibilities incident thereto. (*People* v. *Byers,* 5 Cal. (2d) 676 [55 P. (2d) 1177].) His attempt having proved unsuccessful, he may not now escape the effect of his utterances there upon the plea that the corpus delicti was not established by other proof. This action was to test his right to remain in a civil office and not to impose penalties for crime.

(c) Special emphasis is laid upon the ruling of the court in allowing that part of the appellant's testimony given before the grand jury in which he stated that in his campaign against his predecessor he had charged the latter with unlawful use of a city owned automobile in making his campaign for re-election. But the record discloses that such portion of his testimony was read to the jury upon the suggestion of appellant's counsel during the course of the trial. Appellant therefore has no ground for complaint against the admission of that testimony. However the criticized ruling was further justified by the fact that the report of the city attorney, which was in evidence, contained the statement of appellant that he was not conscious of doing anything wrong at the time of driving the sedan to Montana and that he did not know that it was an illegal act and that he was not familiar with section 63.106 of the Municipal Code. To contradict such claims of good faith and innocence, appellant's criticisms of his predecessor's misuse of a city-owned motor car was competent evidence. (*People* v. *Byers, supra.*)

(d) Finally, it is urged that prejudicial error was committed in admitting the testimony of Councilman Burns to the effect that no authorization or request by the city council was made upon appellant to proceed to Great Falls to make an inspection of its parking system. This assignment is without merit in view of appellant's stipulation at the trial that "he left on a trip to Great Falls without being given any direction to make any survey whatever on behalf of the city of Los Angeles of any park, either in Montana or elsewhere."

Also, while testifying before the grand jury, appellant stated that he left Los Angeles and started on a private trip but conceived the idea of making a survey of the fine boulevard and park system of Great Falls upon arriving at the city where he had formerly lived. In the light of the foregoing no prejudice could have been suffered by appellant by reason of any of the cited rulings.

 (3) It is next contended that the verdict is contrary to the evidence: (1) in that there was no proof of embezzlement as defined by section 504 of the Penal Code and (2) that section 63.106 of the Municipal Code did not prevent the council from exercising its discretion in determining retroactively that appellant's use of the Chrysler "constituted official business." Section 504 makes it embezzlement for any official of a city fraudulently to appropriate "to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust." Subdivision 2 of section 63.106 makes it a misdemeanor for any person to use or operate any unit of automotive equipment owned by the city for any purpose other than upon the official business of the city. Appellant was accused under section 758 of the Penal Code which authorizes the grand jury to accuse any municipal officer "for willful misconduct in office." It was not necessary for the accusation to specify the section from which its authority was derived. The thing which was necessary for the pleading to allege was acts of willful or corrupt misconduct in office. The pleading complied with the statute and the evidence at the trial supported the accusation. That evidence was obtained from the witnesses and the documents which had been presented to the grand jury. To drive a city-owned automobile on a 4,000 mile pleasure jaunt was so clearly an appropriation of the vehicle to a private use that illustration and authority seem supererogatory. His only right to the Chrysler was to use it in performing the city's business. To use it otherwise was a violation of his trust. Without authority he appropriated the use of this public property to his own pleasure.

But appellant argues in this wise: (1) if a councilman was already on a leave of absence, he was not in the lawful possession of the vehicle at the time of his departure and therefore he had no trust because he had no right of possession; (2) if he had authority to drive the Chrysler to Montana, he was, of course, not guilty because the journey was in

the "due and lawful execution of his trust"; if the sedan was purchased for his own use and if no instructions were given to him with reference to its use, and if the council thereafter resolved that his jaunt to Great Falls "constituted official business" then he committed no breach of his trust because he used the car on official business; (3) if section 63.106 contains no limitation upon the authority of the council to grant the use of a vehicle to a councilman, or upon its power to determine that appellant's use of the Chrysler was official business, then the council's determination that the trip to Great Falls constituted official business was final and absolved appellant of misconduct; (4) if the section did contain such limitation it would operate to prevent subsequent legislation contrary to the charter by which the council has power: (a) to judge the qualifications of its members; (b) to provide them with automotive equipment; (c) to enact ordinances upon any subject of municipal control; and the fact that the council had authority to permit the use of the Chrysler for appellant to travel to Montana proves that it is not limited by section 63.106.

The fallacies underlying such esoteric dialectics instantly appear when subjected to the test of sober thought and legalistic reasoning. To say that he could not on Tuesday embezzle a motor car that was in his possession as an official on Monday because at night-fall Monday he left his official cares for a season, is not only fanciful but fantastic. One might as well say that a bank president who strolled into the vaults of his institution in the late evening and carted away its bullion and its bonds to enliven his evening at cards was not guilty of embezzlement because he was off duty at the time of the asportation. But whether in the supposititious case the president stole or embezzled, his act was willful and it was corrupt. If a city treasurer should perform such an act, he would be subjected to the penalty which must follow his conviction under the provisions of section 758 et seq., and the judgment of the court would necessarily be removal of the treasurer from office. (Pen. Code, § 769.)

Appellant had no authority to drive the sedan to Montana. Such a journey without authorization required a use of the car that was inconsistent with its owner's rights and inconsistent with the nature of the trust reposed in appellant and therefore it was an embezzlement. (*People* v. *Baker*, 64

Cal. App. 336 [221 Pac. 654].) Such a journey subjected the automobile to substantial detriment. It was therefore to the extent of its use an embezzlement of the property of the city. ▮ The council had no authority to give its sanction to an act which was forbidden by a general statute as well as by a specific provision of the Municipal Code. It possesses none of the powers which by the Constitution and the code are vested in the superior court to adjudicate charges against officials accused of willful or corrupt misconduct in office. (Const., art VI, § 5; Pen. Code § 758.) We are not called upon to determine whether the city council has authority under the charter to provide a city owned vehicle for each councilman to use in going to and from his residence and other points within the city. What we do say is this: that from the moment that a city-owned automobile comes into the possession of a councilman, his conduct with respect thereto is governed by statute, and by the charter, and the ordinances of the city relating to the subject. Such laws clearly forbid unofficial week-end trips by councilmen with city-owned automobiles, after which they are covered with "the usual dirt which we see most every Monday morning on all council cars" as testified by the garage superintendent. If, during his term of office and the period of his possession of the vehicle, a councilman decides that the laws enacted in the past for his guidance are of less account than the gratification of his personal wishes, the council may not accommodate him by a special suspension of the ordinances or of the general statutes. ▮ Indulgences are unknown to the law which applies continuously and to all persons alike. The sovereign power may through its constituted agencies forgive partially or totally the debt incurred by the violation of a penal statute. But such leniency is exercised by the state only after a conviction of crime. Neither section 758 nor any other statute contains a provision for softening the fall of an official adjudged guilty of willful or corrupt misconduct. The legislature left no alternative to his removal from office.

(4) Even though appellant had been on trial for the crime of embezzlement, he would have no grievance. All the elements of that crime were charged in the accusation and established by proof. ▮ But the purpose of the pleading was not to convict appellant of a crime. Its sole purpose was to inquire whether he was guilty of willful or corrupt misconduct in office as denounced by section 758. This could have been done

by the commission of any number of acts prohibited by penal statute or by ordinances of the city of Los Angeles. It was clearly charged by the pleading and fully established by the proof that in violation of section 504 of the Penal Code, and with a flippant disregard of a city ordinance (§ 63.106) appellant made a selfish use of a "unit of automotive equipment" by driving it on a pleasure jaunt for more than 4,000 miles. His knowledge of his duties and of the law which prescribed his course of conduct left no excuse for his behavior. (*People* v. *Dillon*, 199 Cal. 1, 15 [248 Pac. 230].)

 That a public office is a public trust is a universal truism. No trustee thereof may with impunity exploit its prerogatives, embezzle its properties, or appropriate its funds. Should he do so, he is answerable to the wrath of the sovereign beneficiary to the extent of the utmost farthing. Every state or municipal office is a sanctuary whereat not only should keep vigil the constituted guardians of the public store-house but wherein should toil the standard-bearers of public virtue. An incumbent defiles himself and desecrates his office as would the priest at the altar when he plunders the wealth or usurps the privileges under his watch-care. The rights of the owner of property are instinctively comprehended by every normal person. No cloak of office should so dull his conscience or his sense of values as to render an official untrustworthy when unguarded. He should delight in the unfailing consciousness that he has performed tasks not legally required of him and that he has contributed his own substance for the common good rather than to have been the stealthy profiter from the public bounty. Unless this standard be the pole-star of those who serve the state, we may envisage the day when the trailing vines and clinging mosses will cover the tomb of a once proud civilization.

(5) Appellant assigns as error the giving of certain instructions and the refusal of others as a result of which he claims to have been aggrieved. We have examined all of such instructions and find no prejudicial error in them. But if the court had erred in each instance specified, in view of the record which discloses beyond a peradventure that no injustice can result from an affirmance of the judgment (Const., art. VI, § 4½) we shall not extend this discussion by presenting even a summary of the criticized instructions.

(6) The argument that the court erred in denying ap-

pellant's motion for a new trial has been disposed of by the foregoing.

Judgment affirmed.

Wood (W. J.), J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 3, 1942. Carter, J., voted for a hearing.