[No. E018472. Fourth Dist., Div. Two. Mar. 3, 1999.]

CITY OF PALM SPRINGS, Plaintiff and Respondent, v.
LIVING DESERT RESERVE, Defendant and Appellant.

614

617

---

## COUNSEL

Redwine & Sherrill, Justin M. McCarthy and Steven B. Abbott for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, and Peter K. Shack, Deputy Attorney General, as Amicus Curiae on behalf of Defendant and Appellant.

Rutan & Tucker, David J. Aleshire and David B. Cosgrove for Plaintiff and Respondent.

---

## OPINION

**McKINSTER, J.**—Not infrequently, wealthy individuals, intending both to promote the common weal and to memorialize themselves, give property to a city on the condition that it be used in perpetuity for some specified purpose. With disturbing regularity, however, the city soon tires of using the donated property for the purpose to which it agreed when it accepted the gift, and instead seeks to convert the property to some other use.

In this case, for instance, the City of Palm Springs (City) built a golf course on 30 acres of donated property which it had accepted in 1986 on the express condition that it be used in perpetuity as a desert wildlife preserve. The trial court reluctantly approved. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

In June of 1986, the Bank of America, as trustee of the McCallum Desert Foundation (Foundation) under the will of Pearl M. McManus, deceased,

executed a grant deed (Deed), conveying 30 acres of land (Land) to the City.[1] The Deed provides:

"THIS DEED IS MADE AND ACCEPTED ON THE EXPRESS CONDITION that the land hereby conveyed be used solely as the site of the McCALLUM DESERT PRESERVE AND EQUESTRIAN CENTER, and that grantee, its successors or assigns shall forever use the land and premises for the purpose of maintaining a public park for the exposition of desert fauna and flora, named as the McCALLUM DESERT PRESERVE AND EQUESTRIAN CENTER.

"In the event that the property is not used solely and perpetually as the site of the McCALLUM DESERT PRESERVE AND EQUESTRIAN CENTER, then the interest in the land and premises herein conveyed shall pass to the Living Desert Reserve, Palm Desert, California, and grantee shall forfeit all rights thereto."

The City expressly accepted the grant in October of 1986. Less than three years later, however, the City decided that it would rather build a golf course on the Land. Believing that the golf course would be inconsistent with the condition in the Deed, the City asked the Living Desert for permission to buy other property for use as a preserve instead of the Land. Those negotiations continued periodically without success. The City's final offer was made in November of 1992, when it offered to buy the Living Desert's reversionary interest in the Land for $200,000 and threatened to take the interest by eminent domain if the Living Desert did not agree.

After the Living Desert declined that offer, the City adopted a resolution of necessity (Code Civ. Proc., § 1245.210 et seq.) by which it found that the public health, safety and welfare required the acquisition of the Living Desert's reversionary interest in the Land for the purpose of expanding the City's municipal golf course. In March of 1993, the City filed a complaint in eminent domain (id., § 1250.310) by which it sought to do so. Simultaneously, the City applied for an order for immediate possession of the reversionary interest within 30 days, relying on an appraisal valuing that interest at $200,000 and on a deposit in an equal amount. (Id., § 1255.010 et seq.) The trial court granted the application and issued the order for immediate possession.

In October of 1993, the Living Desert recorded a notice of breach of condition subsequent. (Civ. Code, § 885.050.) The notice alleges that the

---

[1]The Attorney General asked us to take judicial notice of the document which purportedly established the Foundation, the order settling the final account of the executor of the estate of McManus. That request is denied because the Attorney General did not provide the court with a copy of that order. (Evid. Code, § 453, subd. (b).)

City breached the conditions of the Deed by (1) adopting the resolution by which it declared the necessity of acquiring the reversionary interest to permit the golf course expansion and (2) implementing that resolution by filing its eminent domain action and obtaining an order for immediate possession. In the same month, the Living Desert cross-complained against the City to quiet title to the Land. It alleged that, as a result of the City's breach of the conditions and the notice of that breach, the fee simple interest of the City in the Land had reverted to the Living Desert.

The parties stipulated that the issues of whether (1) the reversionary interest held by the Living Desert is a compensable interest and (2) the City had breached the conditions of the Deed would be bifurcated from and tried before the issue of the amount of any compensation due for the reversionary interest.

At the beginning of trial, the City moved for judgment on the pleadings. The trial court granted the motion as to the cross-complaint, finding that the interest of the Living Desert is measured as of the date the complaint in eminent domain was filed, that as of that date the City had not yet changed the use of the Land or otherwise violated the Deed, and that the Living Desert therefore owned only a reversionary interest, not the fee title to the Land. However, it denied the motion on the issue of whether the reversionary interest was compensable. Following an evidentiary bench trial, the trial court issued a statement of decision in which it ruled that the reversionary interest was not a compensable interest and hence no payment was due to the Living Desert, and entered judgment in favor of the City.

The Living Desert appeals. The Attorney General of the State of California appears as an amicus curiae.

## Contentions

In its opening brief, the Living Desert does not challenge the trial court's adverse ruling on its cross-complaint. However, on the complaint, it contends that the trial court erred by relying on Code of Civil Procedure section 1265.410, subdivision (a)(1) (section 1265.410(a)(1)), to determine that the reversionary interest was not compensable. Specifically, it argues that the statute does not apply to efforts by a condemner to relieve itself of the obligation to comply with conditions accompanying a gift of property, and that if it does, the statute permits the taking of property without just compensation, in violation of the federal and state Constitutions.

Challenging the assumptions under which the case was tried below, the Attorney General contends that the Foundation gave the Land to the City in

a charitable trust, not in fee simple subject to a condition subsequent, that the effect of the judgment was to terminate that trust, and that therefore the judgment must be reversed because the trial court lacked subject matter jurisdiction to terminate a charitable trust.

In its reply brief, the Living Desert adopts the Attorney General's argument as an alternative analysis.

## DISCUSSION

### A. *The Deed Granted a Fee Simple Subject to a Condition Subsequent.*

The Attorney General raises a fundamental issue: What is the nature of the interests created by the Deed? The Deed obviously does not convey the Land to the City in fee simple absolute. But was the Land given to the City in trust, or in fee simple subject to a condition subsequent?[2]

■ No extrinsic evidence having been introduced to aid in the construction of the Deed, the issue is purely one of law, which we determine independently. (*City of Manhattan Beach* v. *Superior Court* (1996) 13 Cal.4th 232, 238 [52 Cal.Rptr.2d 82, 914 P.2d 160].)

■ "A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." (Rest.2d Trusts, *supra*, § 348, p. 210; *Hardman* v. *Feinstein* (1987) 195 Cal.App.3d 157, 161 [240 Cal.Rptr. 483].) The elements essential to its creation are a proper manifestation by the settlor of an intention to create a trust (Prob. Code, § 15201), a trust res (*id.*, § 15202), and a charitable purpose[3] (*id.*, § 15203) promoting the welfare of mankind or the public at large, of a community, or of some other class of persons which is indefinite as to numbers and individual identities (*id.*, § 15205, subd. (a); *Estate of Schloss* (1961) 56 Cal.2d 248,

---

[2]A third possibility is that the Land was given subject to a charitable trust, but that the trust was subject to a condition subsequent with a gift over to the Living Desert. (See Rest.2d Trusts, § 401, p. 309.) No one urges such a construction here.

[3]Charitable purposes include the fulfillment of general municipal or other governmental purposes, such as the creation or maintenance of public parks. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 285, p. 1118; Rest.2d Trusts, *supra*, § 373, com. a, p. 256; Bogert, The Law of Trusts and Trustees (2d ed. rev. 1991) § 378, p. 199; *Schaeffer* v. *Newberry* (1951) 235 Minn. 282, 286 [50 N.W.2d 477, 480 ] [". . . gifts for public parks have long been recognized as serving charitable purposes"]; cf. *McKevitt* v. *City of Sacramento* (1921) 55 Cal.App. 117, 125-126 [203 P. 132] [enforcing obligations of city under charitable trust to create a park].) Such gifts may be made to third parties, or directly to the governmental entity. (Bogert, *supra*, § 378, pp. 191-193.)

256 [14 Cal.Rptr. 643, 363 P.2d 875]; *Estate of Dol* (1920) 182 Cal. 159, 163-164 [187 P. 428]). (Prob. Code, § 15004; *Estate of Heil* (1989) 210 Cal.App.3d 1503, 1510 [259 Cal.Rptr. 28].)

The legal title of the res or corpus of any trust is held by the trustee, but the beneficiaries own the equitable estate or beneficial interest. (*Title Ins. & Trust Co.* v. *Duffill* (1923) 191 Cal. 629, 647-649 [218 P. 14]; *Reagh* v. *Kelley* (1970) 10 Cal.App.3d 1082, 1097 [89 Cal.Rptr. 425].) In the event of a breach of duty by the trustee of a private trust, the beneficiaries may sue the trustee for damages and for an equitable decree enforcing the trust. (Prob. Code, § 16420.) But because a charitable trust has an indefinite class of beneficiaries, standing to enforce the trust is generally limited to the Attorney General as the representative of the public. (*Hardman* v. *Feinstein, supra,* 195 Cal.App.3d at pp. 161-162.)

"However, a gift may have a charitable purpose and yet not constitute a charitable trust." (*Schaeffer* v. *Newberry, supra,* 235 Minn. at p. 286 [50 N.W.2d at p. 480].) Rather than create a trust, the owner of property may transfer it to another on the condition that if the latter should fail to perform a specified act the transferee's interest shall be forfeited either to the transferor or to a designated third party. (Rest.2d Trusts, *supra,* § 11, com. a, p. 32.) "In such a case the interest of the transferee is subject to a condition subsequent[4] and is not held in trust." (Rest.2d Trusts, *supra,* § 11, com. a, p. 32; *Walton* v. *City of Red Bluff* (1991) 2 Cal.App.4th 117, 125 [3 Cal.Rptr.2d 275].)

A gift of property in fee subject to a condition subsequent differs from a gift of that same property in trust in at least two ways. First, the transferee of a conditional gift receives both legal and equitable title to the property. Unless and until the transferee breaches the conditions imposed by the transferor, he or she is in the same position as an owner in fee simple absolute. (*Parry* v. *Berkeley etc. Foundation* (1937) 10 Cal.2d 422, 426 [74 P.2d 738, 114 A.L.R. 562].) Second, the transferee has no enforceable duties. The breach of condition may result in the termination of the transferee's interest, but it does not subject the transferee to actions for damages or to enforce the condition. (Rest.2d Trusts, *supra,* § 11, com. b, p. 32.)

---

[4]Under the common law, there were two types of defeasible estates: a fee simple determinable, the reversionary interest of which was the possibility of reverter; and a fee simple subject to a condition subsequent, the reversionary interest of which was the right of reentry. (5 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1989) Estates, §§ 11:4-11:6, pp. 6-11.) The distinctions between these two defeasible estates were statutorily abolished by the adoption of Civil Code section 885.020 in 1982. (Stats. 1982, ch. 1268, § 1, p. 4678.) All defeasible fees are now known as fees simple subject to a condition subsequent, and all executory interests reserved by the grantor after granting such fees are known as powers of termination. (Civ. Code, §§ 885.010 & 885.020.)

■ "Whether a trust or a condition is created depends upon the manifested intention of the transferor; the mere fact that the word 'condition' is used does not necessarily indicate that a condition and not a trust is intended." (Rest.2d Trusts, *supra*, § 11, com. c, pp. 32-33.) Trusts can be created by words of condition. (4A, Scott & Fratcher, The Law of Trusts (4th ed. 1989) § 351, p. 52.) Property given "upon condition" that it be applied to certain charitable purposes is especially likely to be construed as having been given in a charitable trust. (*Ibid.*) The question in each case is whether (1) the donor intended to provide that if the property were not used for the designated charitable purposes it should revert either to the donor's estate or to a contingent donee, or (2) the donor intended to impose an enforceable obligation on the donees to devote it to those purposes. (*Id.*, at p. 53.)

■ Courts favor the construction of a gift as a trust over a conditional gift for several reasons. Because forfeiture is a harsh remedy (4A Scott & Fratcher, The Law of Trusts, *supra*, § 351, p. 53), any ambiguity is resolved against it (Civ. Code, § 1442). Moreover, the transferor's objective is to use the transferee to confer a benefit upon the public. To ensure that the benefit is conferred as intended, the transferor ordinarily wants the intended beneficiary to be able to enforce that intent. Because the only remedy for the breach of a condition is a forfeiture, a condition is not a very effective method of accomplishing those goals. For both of those reasons, courts will generally construe a conveyance as one upon trust rather than upon condition. (1 Scott & Fratcher, *supra*, § 11, p. 116.)

However, if the donor clearly manifests an intention to make a conditional gift, that intention will be honored. (*Rosecrans* v. *Pacific Elec. Ry. Co.* (1943) 21 Cal.2d 602, 605 [134 P.2d 245].) The gift will be construed as one of a fee simple subject to a condition subsequent if ". . . it is expressly provided in the instrument that the transferee shall forfeit it or that the transferer or his heir or a third person may enter for breach of the condition." (1 Scott & Fratcher, The Law of Trusts, *supra*, § 11, p. 116; accord, Rest.2d Trusts, *supra*, § 11, com. f, p. 34; see, e.g., *Rosecrans*, *supra*, at p. 605.)

■ The Deed expressly states the Foundation's intent that, in the event of a breach of the condition, the transferee (City) shall forfeit its interest in favor of a third party (the Living Desert). Accordingly, the Deed must be construed as granting to the City a fee simple subject to a condition subsequent, and assigning to the Living Desert a power of termination.

In arguing that the Deed created a charitable trust, the Attorney General cites a series of cases involving a testamentary gift by William S. Hart. Hart

gave certain real property to the County of Los Angeles subject to the condition that it " 'shall be forever used and maintained by the County and its successors in interest and estate, exclusively as a public park . . . .' " (*Estate of Hart* (1957) 151 Cal.App.2d 271, 274 [311 P.2d 605].) The will also provided that if the county either refused or failed to comply with those conditions, the property would "immediately upon the happening of either or any of said events, revert, and shall go and be distributed, to the State of California for the same uses and purposes and upon the same conditions . . . ." (*Id.*, at p. 276.) The court held that the will created a charitable trust, stating that ". . . a public trust arises by operation of law where a municipal corporation accepts a grant of real property for park purposes . . . ." (*Id.*, at p. 284). In that event, the municipality holds the property "as trustee of a charitable trust for the benefit of the public in general." (*Hart* v. *County of Los Angeles* (1968) 260 Cal.App.2d 512, 516 [67 Cal.Rptr. 242].)

However, in neither of those two opinions did the appellate court address the issue of whether the forfeiture language manifested an intention to grant a fee simple subject to a condition subsequent rather than to create a charitable trust. "Obviously, cases are not authority for propositions not considered therein." (*Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496].) Therefore, they do not support the argument that the Deed conveyed the Land to the City as the trustee of a charitable trust rather than in fee simple subject to a condition subsequent.

### B. *Because the Deed Did Not Create a Charitable Trust, the Attorney General Is Not a Necessary Party to the Action.*

Under the Uniform Supervision of Trustees for Charitable Purposes Act (Gov. Code, §§ 12580-12599.5), "[t]he primary responsibility for supervising charitable trusts in California, for insuring compliance with trusts and articles of incorporation, and for protection of assets held by charitable trusts and public benefit corporations, resides in the Attorney General" (*id.*, § 12598, subd. (a)). Accordingly, ". . . no court shall have jurisdiction to modify or terminate any trust of property for charitable purposes unless the Attorney General is a party to the proceedings." (*Id.*, § 12591.) Noting that he has never been made a party to the City's action, the Attorney General asserts that the trial court lacked subject matter jurisdiction over that action.

As explained above, the Deed created a fee simple subject to a condition subsequent, not a charitable trust. Therefore, the Attorney General is not a necessary party to the action, and the trial court did not lack subject matter jurisdiction.

## C. *The Living Desert's Future Interest Is Compensable.*

■ The general rule in California is that, when a condemner takes property the ownership of which is split into an estate in fee simple subject to a condition subsequent and a power of termination, the owner of the future interest is not entitled to any compensation unless the condition has been breached as of the date of valuation. If no such breach has yet occurred, then the possibility of a reversion is too remote and speculative to be valued, and the reversionary interest is deemed to be valueless for purposes of condemnation. (*Romero* v. *Department of Public Works* (1941) 17 Cal.2d 189, 194-195 [109 P.2d 662]; *People* ex rel. *Dept. of Public Works* v. *City of Fresno* (1962) 210 Cal.App.2d 500, 510-517 [26 Cal.Rptr. 853]; *People* v. *City of Los Angeles* (1960) 179 Cal.App.2d 558, 574-575 [4 Cal.Rptr. 531]; *City of Santa Monica* v. *Jones* (1951) 104 Cal.App.2d 463, 472-473 [232 P.2d 55].)

However, the general rule denying compensation to the holder of the reversionary interest applies only "in the absence of exceptional circumstances . . . ." (*People* ex rel. *Dept. of Public Works* v. *City of Fresno, supra,* 210 Cal.App.2d at p. 515.) One of the exceptions is that the reversionary interest is compensable if the reversion would have been likely to occur within a reasonably short time. That exception is described in the Restatement of Property section 53, comment c,[5] and has been recognized in California since at least 1951 (*People* ex rel. *Dept. of Public Works* v. *City of Fresno, supra,* at p. 517; *People* v. *City of Los Angeles, supra,* 179 Cal.App.2d at p. 574; *City of Santa Monica* v. *Jones, supra,* 104 Cal.App.2d at p. 474). That exception was codified in 1975 as section 1265.410(a)(1), which provides: "Where the acquisition of property for public use violates a use restriction coupled with a contingent future interest granting a right to possession of the property upon violation of the use restriction: [¶] (1) If violation of the use restriction was otherwise reasonably imminent, the owner of the contingent future interest is entitled to compensation for its value, if any."

■ The trial court found that this exception did not apply because a violation of the restriction by the City was not reasonably imminent. It

---

[5]That comment provides in relevant part: "If, viewed from the time of the commencement of an eminent domain proceeding, and not taking into account any changes in the use of the land sought to be condemned which may result as a consequence of such proceeding, the event upon which a possessory estate in fee simple defeasible is to end is an event the occurrence of which, within a reasonably short period of time, is probable, then the amount of damages is ascertained as though the estate were a possessory estate in fee simple absolute, and the damages, so ascertained, are divided between the owner of the estate in fee simple defeasible and the owner of the future interest in such shares as fairly represent the proportionate value of the present defeasible possessory estate and of the future interest." (Rest., Property, *supra,* § 53, com. c, p. 188.)

reasoned (1) that the City did not intend to violate the condition until it was relieved from the obligation of complying with it, either by agreement with Living Desert or by eminent domain, and (2) that the City's preparation to exercise its power of eminent domain could not be considered in determining whether a violation was reasonably imminent. As will be explained below, both its reasoning and its conclusion are mistaken. To the contrary, the undisputed evidence demonstrates that the violation was imminent. Therefore, the exception to the general rule did apply, and the Living Desert's interest was compensable.

1. *The Trial Court Applied the Wrong Standard When Deciding Whether a Violation Was Reasonably Imminent.*

On the facts of this case, both parts of the trial court's analysis were incorrect.

(a) *That the City Did Not Intend to Violate the Condition Is Irrelevant.*

The trial court relied upon its factual finding that "the last thing the City wanted to do was 'violate' the restriction and lose its fee." Obviously, the City did not want to suffer the consequences of violating the restriction while it was still in effect. But that fact, although undeniable, is irrelevant to the question of whether a violation of the condition was reasonably imminent.

Reasonableness is an objective test. (*San Diego Gas & Electric Co.* v. *Superior Court* (1996) 13 Cal.4th 893, 938 [55 Cal.Rptr.2d 724, 920 P.2d 669].) Hence, the relevant inquiry is not whether the defendant regards the action as reasonable, but whether reasonably prudent persons generally, looking at the circumstances impartially and objectively, would consider it to be reasonable. (*Ibid.*) Therefore, the reasonable imminence of a violation is also to be determined objectively. It is not determined by the City's subjective understanding of the legal consequences of its actions. To the extent that the trial court relied on the City's subjective understanding, it erred.

(b) *When the Condemner Already Owns the Present Interest, Actions Taken by the Condemner to Condemn the Future Interest Must Be Considered to Determine Whether a Violation of the Condition Is Reasonably Imminent.*

As noted above, section 1265.410(a)(1) provides that a future interest is compensable only if the violation of the use restriction is "otherwise reasonably imminent . . . ." "[O]therwise" refers to the exclusion of any consideration of the eminent domain proceedings. Instead, the imminence of the

violation is to be evaluated "from the time of the commencement of an eminent domain proceeding, and [without] taking into account any changes in the use of the land sought to be condemned which may result as a consequence of such proceeding . . . ." (Rest., Property, *supra*, § 53, com. c, p. 188; accord, *People* ex rel. *Dept. of Public Works* v. *City of Fresno, supra,* 210 Cal.App.2d at p. 517 [as "if condemnation had not occurred."].)

Consideration of the effect of the condemnation is excluded because it would generally cause the owner of the present interest to suffer an unfair forfeiture. "Where the performance of a condition in a deed is made impossible by operation of law, compliance therewith is excused, and no forfeiture results." (*Woodville* v. *United States* (10th Cir. 1946) 152 F.2d 735, 737-738.) Accordingly, if further use of the property by the grantee in conformance with the use restriction is prevented by the divestiture of the grantee's title through eminent domain, the failure to perform is excused as being involuntary on the part of the grantee, and the future interest is not compensated. (*Romero* v. *Department of Public Works, supra,* 17 Cal.2d at p. 194; *Woodville,* p. 738; *United States* v. *2,086 Acres of Land, etc.* (W.D.S.C. 1942) 46 F.Supp. 411, 413.)

In short, section 1265.410(a)(1) contemplates a situation in which the grantee of the conditional deed intends to continue to comply with the condition indefinitely, but is prevented from doing so because a paramount authority seizes title to the property through the power of eminent domain. And because it is designed to apply in situations in which the intentions and desires of the grantee of the present interest are contrary to and frustrated by the condemner, it necessarily assumes that the grantee and the condemner are separate entities dealing at arm's length.

The circumstances before us are radically different from those assumed by the statutory rule, in two respects.

First, the grantee of the present interest and the condemner of the power of termination are one and the same entity: the City. Given that identity, we cannot ignore the actions of the City as condemner when considering whether a voluntary violation of the use restriction by the City as grantee was reasonably imminent. Instead, we must evaluate the conduct of the grantee regardless of what other hats it may be wearing. When one of those hats is that of a condemner, the actions of the condemner are, and must be recognized to be, those of the grantee.

Second, the condemnation of the future interest did not divest the City of its present interest in the Land, and thus did not prevent the City from continuing to use the Land in conformance with the use restriction. That it

did not plan to do so was not a decision forced upon it by the condemnation, but rather was its own voluntary choice, for which it should be held accountable.

For both of these reasons, that portion of section 1265.410(a)(1) which precludes the consideration of the condemnation proceedings to determine whether a violation of the use restriction is reasonably imminent, does not apply here.

### 2. *The Violation of the Conditions of the Gift Was Imminent.*

When the condemnation proceedings are considered, the undisputed evidence proves that a violation of the use restriction was reasonably imminent.

In its resolution of necessity, the City expressly found that the public welfare required the construction of a golf course on the Land, and that the acquisition of the future interest was necessary to do so. Similarly, in its application for an order for immediate possession (Code Civ. Proc., § 1255.410), the City stated that it "must acquire the reversionary interest in order to devote the property to the public recreational uses" specified in the resolution of necessity.

Moreover, the City believed that the use of the Land as a golf course would violate the conditions of the gift. In one of its letters to the Living Desert, it offered to exchange adjacent property for the Land, explaining that "a golf course does not appear to be consistent with the intent of this grant . . . ."

Even in the absence of that express statement, the City's actions demonstrate its belief that the golf course would violate the use restriction: If a golf course was consistent with the conditions, then there would have been no need to buy the future interest. It is beyond belief that the City would have offered to pay $200,000 to purchase the future interest, and thereafter incurred the attorney's fees necessary to initiate the condemnation action, unless it believed that the planned golf course would violate the conditions. The only reason to do so was to attempt to eliminate the conditions by merging the present and future interests.[6]

Those circumstances establish that the violation of the conditions was reasonably imminent. Although we have found no California case involving

---

[6]Noting that the trial court expressly declined to decide whether use of the Land for a golf course would violate the conditions, the City argues that the issue must be remanded for trial. It is mistaken. Trials are reserved for disputed factual issues. No trial is necessary when a factual issue cannot be disputed. The Deed provides that the Land is to be used "solely" for the exhibition of desert flora and fauna. Even if we were to accept the City's questionable

similar facts, the Supreme Court of Texas has addressed that precise issue on a substantially identical factual record. (*Leeco Gas & Oil Co.* v. *Nueces County* (Tex. 1987) 736 S.W.2d 629.) In 1960, Leeco granted 50 acres of land to the county to be used as a park, retaining a reversionary interest. (*Id.,* p. 630.) Pleading that its plans for the future development of the property included uses which may violate the grantor's conditions (*id.,* at p. 631), in 1983 the county commenced condemnation proceedings to purchase Leeco's reversionary interest (*id.,* at p. 630). The trial court awarded Leeco nominal damages of $10. (*Ibid.*)

The Supreme Court reversed. Although noting that a future interest is generally not compensable unless the reversion is imminent (Rest., Property, *supra,* § 53, coms. b & c, pp. 187-188), and that there was no evidence that the county intended to violate the condition so long as Leeco held the reversionary interest, the court explained that that evidence was not determinative of the issue. (*Leeco Gas & Oil Co.* v. *Nueces County, supra,* 736 S.W.2d at pp. 630-631.) The evidence was undisputed that the county sought to purchase the reversionary interest in order to permit uses of the property which were inconsistent with the restrictive condition. (*Id.,* at p. 631.) "Thus, this is not a case of condemning a 'remote' possibility of reverter, but rather an attempt by the County to remove the 'burden' of the reversionary interest by condemning the interest and paying nominal damages." (*Ibid.*)

In short, the Texas Supreme Court held that when the purpose of taking the future interest was to permit the holder of the present interest to use the property in a manner which violates the conditions under which the present interest was given to the condemner, the violation of those conditions is imminent and the taking is compensable. The court explained that any other result would be contrary to public policy. "To allow a governmental entity, as grantee in a gift deed, to condemn the grantor's reversionary interest by paying only nominal damages would have a negative impact on gifts of real property to charities and governmental entities. It would discourage these types of gifts in the future. This is not in the best interests of the citizens of this State." (*Leeco Gas & Oil Co.* v. *Nueces County, supra,* 736 S.W.2d at p. 631.)

That analysis is persuasive, for several reasons. First, it is consistent with the concerns, voiced by this court and others, that if a public entity which had accepted a gift of property subject to a condition limiting the use of that property were permitted to avoid the force of the donor's restriction, donors would be discouraged from making such gifts in the future. (*Save the*

assertion that a golf course could be landscaped in such a fashion as to exhibit desert plants and animals, the fairways and greens would obviously not be devoted to such an exhibition, and thus such a course would not comply with the conditions of the Deed.

Welwood Murray Memorial Library Com. v. *City Council* (1989) 215 Cal.App.3d 1003, 1014 [263 Cal.Rptr. 896] [gift of land for library]; *Big Sur Properties* v. *Mott* (1976) 62 Cal.App.3d 99, 105 [132 Cal.Rptr. 835] [gift of land for park].)

Second, denying compensation under these facts would frustrate the public policy in favor of the enforcement of existing charitable gifts. The importance of that policy is demonstrated by the Uniform Supervision of Trustees for Charitable Purposes Act which, as discussed above, provides that the primary responsibility for ensuring compliance with the instructions of the settlors of charitable trusts and of other charitable donors is vested, not in the beneficiaries of those charities, but in the Attorney General, a public officer. (Gov. Code, § 12598, subd. (a).)

The Eminent Domain Law promotes that policy by specifically requiring a donor's charitable intent to be continued even when the actual gift has been taken for a different public use. If a condemner takes property subject to a use restriction which requires the property to "be devoted to a particular charitable or public use, the compensation for the property shall be devoted to the same or similar use coupled with the same contingent future interest." (Code Civ. Proc., § 1265.410, subd. (b).) Thus, the happenstance that a public entity finds it necessary to take the physical property, thereby converting the gift into cash, does not relieve the donee of its obligation to continue to use the gift for charitable purposes. That policy of enforcing the donor's charitable intent, even when the original gift has been taken by eminent domain, is totally inconsistent with a rule which would permit a public entity receiving a conditional gift to destroy the condition through condemnation without compensation to the holder of the reversionary interest.[7]

Finally, this analysis ensures that the City does not profit from its unfair and unseemly tactics. When offered 30 acres of valuable property on the condition that it be used exclusively and perpetually as a public park devoted to the display of desert plants and animals, the City eagerly accepted, apparently without voicing any objection to the condition imposed by the donor. In reliance upon the City's agreement to that condition, the Foundation conveyed the Land. But only a few years later, the City unilaterally renounced its agreement to devote the Land to the charitable use specified by the Foundation and hatched a plan not only to terminate that restrictive condition but to do so in a manner which would deprive the Living Desert of the means of carrying on the Foundation's charitable intent. Whether the

---

[7]For the same reason, we question whether the City's condemnation solely of the reversionary interest relieves it of its duty under the Deed to comply with the use restriction. However, the parties have not raised that issue, and we do not decide it.

City's refusal to comply with the condition is the result of promissory fraud or a subsequent change of heart, the unfairness to the donor is palpable.

One of the maxims of equity is that "[h]e who takes the benefit must bear the burden." (Civ. Code, § 3521.) In this context, that means that the donee of a conditional gift may not keep the gift unless the donee complies with the donor's conditions. That the donee in this case is a public entity, endowed with the power of eminent domain, does not exempt it from that rule. To the contrary, public entities should exemplify equitable conduct. "A public office is a public trust created in the interest and for the benefit of the people." (*Terry* v. *Bender* (1956) 143 Cal.App.2d 198, 206 [300 P.2d 119].) As trustees for and representatives of the public, local public officials are required to discharge their responsibilities with the utmost fidelity and integrity. (*Ibid.*) They should be " 'standard-bearers of public virtue.' " (*People* ex rel. *Mosk* v. *Barenfeld* (1962) 203 Cal.App.2d 166, 173 [21 Cal.Rptr. 501], quoting *People* v. *Harby* (1942) 51 Cal.App.2d 759, 773 [125 P.2d 874].)

The City, by contrast, has been unfaithful both to the Foundation's intent and to the spirit of the conditions under which it accepted the Foundation's gift. And whether the City's policymakers genuinely believed that the law might permit it to keep the Land without either complying with the Foundation's wishes or paying fair compensation—indeed, without paying *any* compensation whatsoever—the decision to assert that position did not display the high degree of fairness, justice, and virtue that should characterize public entities. Such inequitable behavior must not be rewarded.

In summary, we hold that if a public entity accepts a gift of property by the terms of which the public entity receives a fee simple subject to a condition subsequent restricting the use of the property to a particular charitable use, and if that same public entity thereafter uses its power of eminent domain to take the power of termination reserved by the donor or given by the donor to a third party, with the intention of eliminating the use restriction and thereby permitting a use of the property which would violate the condition, then a violation of that condition is reasonably imminent. Accordingly, the public entity must pay compensation to the holder of the power of termination. (§ 1265.410(a)(1).)

3. *The Requirement to Pay Compensation Is Not an Improper Limitation on the Power of Eminent Domain.*

The City argues that because eminent domain is an inherent governmental power, the exercise of that power can never constitute a breach of contract, and thus its decision to take the future interest by eminent domain to build a

golf course cannot constitute a breach of the conditions of the Deed, citing *City of Glendale* v. *Superior Court* (1993) 18 Cal.App.4th 1768 [23 Cal.Rptr.2d 305]. Its reliance is misplaced. There, Glendale, as lessor, had let a city building to a private lessee for a period of 20 years under a lease which provided for specified damages should Glendale terminate the lease prematurely. (*Id.*, at p. 1773.) After five years, Glendale filed an action in eminent domain to take the balance of the lessee's leasehold interest. (*Id.*, at pp. 1773-1774.) The lessee cross-complained for damages for breach of contract. (*Id.*, at p. 1774.) The issue was whether Glendale had agreed not to terminate the lease through eminent domain and thus was liable for contractual damages instead of simply compensation for the property taken. (*Id.*, at p. 1175.)

The appellate court held that Glendale had not covenanted to refrain from exercising its power of eminent domain either expressly or by implication, and that even if it had, its agreement to do so would not have been enforceable because an inherent governmental power such as eminent domain cannot be limited by contract. (*City of Glendale* v. *Superior Court, supra,* 18 Cal.App.4th at pp. 1777-1780.) Thus, the lessee could recover compensation for the value of the balance of the leasehold interest, but could not collect damages for the breach of the alleged covenant. (*Id.*, at pp. 1780-1781.)

This case is readily distinguishable from *City of Glendale*. First, no one contends that the exercise of eminent domain to take the future interest constitutes a breach of the conditions. Instead, it is the City's decision to cease using the Land, in which it already owned a present interest, in conformity with the use restrictions which established that a breach of the conditions was imminent.

Second, there is no claim here that, by accepting the gift, the City either assumed enforceable obligations to use the property in accordance with the conditions or agreed to a limitation of its right to exercise the power of eminent domain. Indeed, as noted in part A of this opinion, the holder of a conditional fee has no enforceable obligation and cannot be compelled to perform in accordance with the conditions of the gift. The only remedy is the power of termination. Thus, unlike *City of Glendale*, no one is suing the City for damages for breach of contract.

Third, the issue here is not whether the condemner had the power to take the condemnee's property interest. The Living Desert did not contest the City's right to take either below or on appeal. Instead, the only issue is whether the property interest taken by the City has compensable value. The requirement to pay compensation is not an improper limitation on the power of eminent domain. (U.S. Const., 5th Amend; Cal. Const., art. I, § 19.)

The City's reliance upon *City of South San Francisco* v. *Mayer* (1998) 67 Cal.App.4th 1350 [79 Cal.Rptr.2d 704], is similarly misplaced. There, the city was the lessee of a long-term lease and exercised its power of eminent domain to take the interest of the lessor, but not its own leasehold interest. (*Id.*, at p. 1352.) The issue on appeal was whether the lessor could force the city to take the city's leasehold interest. (*Id.*, at p. 1354.) The appellate court held that the lessor could not, reasoning in part that the city cannot be forced " 'to buy again that which it has already bought *and paid for.*' " (*Id.*, at p. 1355, quoting *State of California* v. *Whitlow* (1966) 243 Cal.App.2d 490, 494 [52 Cal.Rptr. 336].)

Again, that opinion has no application here. South San Francisco had paid for the leasehold interest it enjoyed, and thus could not be required to pay for it a second time. By contrast, the City has never "paid for" its present interest in the Land. Rather than convey the Land to the City in exchange for monetary consideration, the Foundation asked only that the City put the Land to the charitable use specified by Pearl McManus. The City having reneged on its promise to do so, it will have gained an unfair windfall unless it is required to pay for it now.

### 4. *Conclusion*

Given the identity of the grantee and the condemner, the trial court prejudicially erred in refusing to consider the City's condemnation proceedings when deciding whether a violation of the use restriction by the City was reasonably imminent. Accordingly, the trial court's conclusions that the violation was not reasonably imminent and that the Living Desert's power of termination was not compensable must be reversed. However, no retrial on that issue is necessary, because the evidence establishing the imminence of the violation is both undisputed and indisputable. Accordingly, the trial court is instructed that the violation of the use restriction was reasonably imminent and that the power of termination was compensable. (§ 1265.410(a)(1).)

Had the condition been violated before the City commenced its condemnation action, the measure of compensation payable to the Living Desert would have been the fair market value of an estate in fee simple absolute. (Rest., Property, *supra*, § 53, com. d, pp. 189-190.) The violation here had not yet occurred when this action was filed but was reasonably imminent. Indeed, given that the City was requesting possession of the Land within 30 days, that violation was likely to occur within a matter of months. Under that circumstance, the trial court should apply the same measure of compensation to determine the value of Living Desert's power of termination, i.e., 100 percent of the value of the unrestricted fee in the Land. (*Pa. Dept. of Transp.*

v. *Montgomery Tp.* (Pa.Commw.Ct. 1995) 655 A.2d 1086, 1090 [six months until violation].)[8]

### DISPOSITION

That portion of the judgment ruling in favor of the City on the Living Desert's cross-complaint to quiet title is affirmed. That portion ruling in favor of the City on its complaint in eminent domain is reversed, and the trial court is directed that the Living Desert's power of termination is compensable. The matter is remanded to the trial court to determine the compensation due, in accordance with the views expressed in this opinion. The Living Desert Reserve shall recover its costs on appeal. (Code Civ. Proc., § 1268.720.)

Ramirez, P. J., and Gaut, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 3, 1999.

---

[8]The City contends that it is improper for us to discuss valuation, an issue which the trial court did not reach below. It is mistaken. Code of Civil Procedure section 43 requires an appellate court to determine all questions of law involved in the case which are necessary to the final determination of the case upon retrial. Because we are remanding the matter for a new trial to determine the amount of compensation due for the taking of the future interest, it is proper for us to instruct the trial court concerning the measure of valuation to be used.