[Civ. No. 21629.   Second Dist., Div. One.   May 9, 1956.]

VAN M. GRIFFITH, Appellant, v. DEPARTMENT OF PUBLIC WORKS et al., Respondents.

Loren A. Butts for Appellant.

Edmund G. Brown, Attorney General, Everett W. Mattoon and Walter S. Rountree, Assistant Attorneys General, John F. Hassler, Deputy Attorney General, Roger Arneberg, City Attorney (Los Angeles), Bourke Jones, Assistant City Attorney, Claude E. Hilker, Deputy City Attorney, Robert E. Reed, George C. Hadley, Ford Hendricks and Thomas M. Dankert for Respondents.

DORAN, J.—The plaintiff herein is not only a "resident, citizen and taxpayer of the City of Los Angeles," but, as alleged in the complaint, "is the son of GRIFFITH JENKINS GRIFFITH and MARY CHRISTINA GRIFFITH, both now deceased, and is the owner of a contingent remainder interest in and to" the Griffith Park real estate herein involved, which was given to the city by plaintiff's parents for park purposes.

The present action was instituted for the purpose of enjoining the respondents, designated state and city officials, "from diverting a portion of the property donated for public park purposes . . . from a park use to that of a public freeway," and for declaratory relief. It appears that Griffith Park contains some 3,000 acres of land and that the proposed freeway will divert approximately 206 acres from park purposes.

Among other things, the complaint alleges "That the defendants all working in conjunction with each other intend to and will unless restrained" effect the diversion in question, "in violation of the trust upon which said property is held by the City of Los Angeles," and in violation of the city charter.

The complaint alleges that on December 16, 1896, plaintiff's parents by letter offered said park property to the city of Los Angeles, which offer was on the same day duly accepted by the city for park purposes. Thereafter, the donors executed a deed to the city containing a provision that the property was "To be used as a PUBLIC PARK for purposes of recreation, health and pleasure, for the use and benefits of the inhabitants of said City of Los Angeles, forever," to be used and maintained "exclusively as a public park and pleasure ground."

It is stipulated in the conveyance that "whenever said tract of land hereby conveyed, or any part thereof shall cease to be used as a park," or if the name of Griffith Park be changed, "then the lands hereby conveyed shall immediately . . . revert to said parties of the first part or their heirs." An exception is made to the effect "that the use of any part of said premises . . . for railroad or other transportation purposes for carrying the inhabitants of said city into and through said park, shall not be considered a violation of any of the conditions upon which this donation and grant are made." It will be noted that the donors were not content with merely designating the granted property as a park, but definitely provided for a reversion in the event of any diversion or deviation.

Contrary to the respondents' statements, the State of California is not made a defendant. Plaintiff has charged that certain named persons, acting as state and city officials, "all working in conjunction with each other," are about to divert a portion of the granted lands from park purposes. In this situation injunctive relief and declaratory relief are both sought. That proposed and concerted action by state and city officials, in violation of law and of private rights, is a proper subject for judicial scrutiny can hardly be doubted.

The complaint further alleges that the city board of recreation and park commissioners have not authorized the opening, establishment and maintenance of the proposed freeway, as required by section 170 of the city charter, but that said board has entered objections and protests in respect thereto. It is also alleged that the use of said lands for freeway purposes "will constitute an illegal waste of and injury to the property of the City of Los Angeles."

The second cause of action, for declaratory relief, repleads the first cause of action, and alleges a controversy concerning the defendants' right to construct the freeway over the lands conveyed to the city by the Griffiths, in violation of the terms of the grant, and without the consent of the board of recreation and park commissioners.

As hereinbefore stated, the trial court sustained demurrers to the complaint without leave to amend. The present review, therefore, is not concerned with the ultimate outcome of the controversy or whether the plaintiff will be able to prove the allegations made. The only present concern is whether the complaint as it stands, under any reasonable theory, can be deemed to state a cause of action.

In a memorandum sustaining the demurrers and dismissing the action, the trial court states that "The only ground for a cause of action against the City and its officials is the allegation: 'That the defendants all working in conjunction with each other intend to . . . divert a portion of the park to a "public highway." ' The basis for this allegation is the agreement entered into between the City and the State as alleged in Paragraph XI. A taxpayer can bring suit only in cases involving fraud, collusion, *ultra vires,* or a failure on the part of a governmental body to perform a duty specifically enjoined. (*Pratt* v. *Security Trust & Savings Bank,* 15 Cal.App.2d 630 [59 P.2d 862].) It does not appear to the Court that the plaintiff has brought himself within this rule."

As noted in appellant's brief, however, the plaintiff, Van M. Griffith, is not in this case suing as a mere citizen and taxpayer, but, as the son of the grantors, "is the owner of a contingent remainder interest" in the property. If there has been a violation of the grant to the City, the Griffith Park property will revert to the Griffith heirs. And, as provided in Civil Code, section 826, "A person having an estate in fee, in remainder or reversion, may maintain an action for any injury done to the inheritance."

Plaintiff's complaint, in legal effect, alleges both "collusion," and "*ultra vires*" on the part of the defendants, which, as noted by the trial court, are proper grounds for an action by a taxpayer. Assuming, as must be done, that the plaintiff is able to substantiate the truth of these allegations, it would appear that, occupying the dual status of taxpayer and one having a contingent remainder or reversionary interest in the property involved, plaintiff is a proper person to bring the present action. And, considering the complaint on its face, standing alone, without regard to various extraneous matters which seem to have crept into the case, it appears that plaintiff has stated a cause of action which should only be determined after a plenary trial of the issues. In such a situation, it will not suffice to decide the issues, summarily, upon a hearing of the respondents' demurrers.

A survey of the trial court's memorandum seems to indicate that the ruling sustaining the demurrers and dismissing the action is predicated not alone upon the language used in the complaint, but upon a consideration of various matters of fact and law which would be proper issues upon a trial of the merits. This is not the function of a demurrer which

is concerned solely with the allegations found in the complaint and not at all with the final outcome.

The trial court construes the Griffith deed proviso that the property may be used "for railroad or other transportation purposes for carrying *the inhabitants of said City* into and through said park," as creating a privilege open to the general public. It is difficult to believe that the Griffith donors ever intended that this provision should be interpreted as furnishing authority for construction of a public, high-speed freeway which will remove some 206 acres of land from the original park purpose. And if such a definite provision requires judicial interpretation, then the plaintiff should be accorded full opportunity to present the Griffith side of the controversy.

As said in appellant's brief, the terms of such a grant should be strictly construed, and in the language of *Roberts* v. *City of Palos Verdes Estates,* 93 Cal.App.2d 545, 547 [209 P.2d 7], "It is well settled that where a grant deed is for a specified, limited and definite purpose, the subject of the grant cannot be used for another and different purpose." And in *Olmstead* v. *City of San Diego,* 124 Cal.App. 14 [12 P.2d 22], it was held that the city council should be enjoined from constructing a road through lands dedicated as a park where the proposed road would seriously interfere with the use of such lands as a park.

Much has been said in the respondents' brief concerning the right of the state to condemn the land in question for freeway purposes. In the trial court's memorandum it is stated that the private property which may be so taken under Code of Civil Procedure, section 1240, includes: "Property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has already been appropriated." Whether the proposed freeway is a "more necessary public use than" that of the park use for which the Griffith grant was intended, raises but another material question which should not be summarily disposed of.

The trial court's memorandum in like manner calls attention to the fact that "In 1937 the Legislature added Section 103.5 to the Streets and Highways Code which provides: 'The real property which the department may acquire by eminent domain, or otherwise, includes any property dedicated to park purposes, however it may have been dedicated, when the commission has determined by such resolution that

such property is necessary for State highway purposes.' This section does not appear to have been passed upon by an appellate court in this state." The question of constitutionality is not directly presented on this appeal, but should the broad terms of this statute be held unconstitutional as conferring unlimited power on the commission, or for any other reason, then it may be questioned whether the position taken by respondents in the present controversy, is warranted in law. The present controversy, incidentally, is not a condemnation proceeding.

The above matters are here mentioned for the purpose of pointing out the many and varied matters which seem to have been given consideration in ruling on the demurrers, such matters often depending in whole or in part upon factual issues or mixed questions of law and fact. Neither trial nor appellate courts should be distracted from the main issue, or rather, the only issue involved in a demurrer hearing, namely, whether the complaint, as it stands, unconnected with extraneous matters, states a cause of action.

As stated in *Lloyd* v. *R.K.O. Pictures, Inc.,* 136 Cal.App. 2d 638, 642 [289 P.2d 295], and elsewhere, the allegations of the complaint must be regarded as true, and a reviewing court "is confined to the allegations of the complaint," as is a trial court, in determining the matter. Other matters, outside the complaint, although doubtless proper subjects for consideration at the trial, should not be considered. Whether plaintiff is able to establish the allegations made, to the satisfaction of a trial court or jury, or what the final outcome may be, are matters of no importance so far as the present inquiry is concerned.

If the plaintiff can establish the truth of the allegations made, which amount to charges of collusion and conspiracy on the part of city and state officers to divert dedicated park property to freeway use, in violation of the original grant and of the city charter, and the other allegations, a case has been made out which would seem to justify the relief prayed for. Moreover, the plaintiff will then be entitled, under the complaint, to a declaratory judgment definitely confirming, refuting, limiting or interpreting, as the evidence requires, the nature and extent of rights and obligations arising out of the original grant, and the defendants' alleged right to divert the use of the Griffith Park property.

The judgment is reversed, with instructions to overrule the demurrers to the complaint, to allow respondents a reason-

able time within which to file their answers, if so advised, and to proceed to a trial on the merits.

White, P. J., and Fourt, J., concurred.

Petitions for a rehearing were denied May 29, 1956, and respondents' petitions for a hearing by the Supreme Court were denied July 5, 1956. Gibson, C. J., and Spence, J., were of the opinion that the petitions should be granted.