[No. A114120. First Dist., Div. Three. Sept. 21, 2007.]

COUNTY OF SOLANO, Plaintiff, Cross-defendant and Respondent, v. PAUL HANDLERY, Individually and as Trustee, etc., Defendant, Cross-complainant and Appellant.

568

COUNSEL

Coblentz, Patch, Duffy & Bass, Jonathan R. Bass, Susan K. Jamison and Rachel G. Cohen for Defendant, Cross-complainant and Appellant.

Dennis Bunting, Azniv Darbinian, Kimberly Alexander Yarbor and Steven M. Ingram for Plaintiff, Cross-defendant and Respondent.

## OPINION

**HORNER, J.**[*]—This appeal arises out of an action by respondent County of Solano (County) to quiet title to certain real property it received as a gift from appellant Paul Handlery's parents, Rose and Harry Handlery, in 1946 (the property). Below, County sought a judicial determination that it owned the property free of certain restrictions on its use that were contained in the grant deed executed by Harry and Rose Handlery in 1946, and reiterated in a quitclaim deed executed by Harry and Rose Handlery in 1947. Appellant Paul Handlery (Handlery), in turn, filed a cross-complaint seeking a judicial declaration of the parties' respective rights and obligations with respect to the property. The trial court granted summary judgment on both the complaint and cross-complaint in County's favor. For reasons set forth below, we reverse the trial court's grant of summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1946 and 1947, Rose and Harry Handlery (collectively, Grantors) executed two deeds conveying to County certain real property located in the City of Vallejo, Solano County. Under the first deed, a grant deed executed in 1946, Grantors conveyed the property to County in consideration for $10 for use as "a County Fair or exposition and purposes incident thereto, which may include but not necessarily be limited to a public park, playground and/or recreational area." The 1946 grant deed expressly prohibited County from selling, assigning or transferring the property, and provided that, should the County breach any condition, restriction or covenant contained in the deed, the property was to "immediately revert to the Grantors herein, their heirs, successors, administrators and assigns, and no public use or interest therein shall be deemed to have been acquired so as to divert or render ineffective said reversion . . . ."

The second deed, a quitclaim deed executed in 1947, contained restrictions on the property's use nearly identical to those contained in the 1946 grant deed, but omitted the language providing for a right of reversion to Grantors or their heirs, successors, administrators and assigns in the case of a breach of those restrictions. Specifically, the deed provided:

---

[*]Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

"(a) Said land shall be used only for a county fair or exposition for Solano County and purposes incident thereto, which may include public parks, playground and/or recreational areas, and for such other purposes for which county fair grounds may be used.

"(b) Said County of Solano may grant rights of way for sewer, power and other utility purposes.

"(c) Said land shall not be sold, assigned, or transferred by said County of Solano."

On June 13, 1947, County adopted a resolution accepting "the quitclaim deed of the [property] which said property is conveyed to said County as a gift for a County Fair site, and other uses, as in said quitclaim deed set forth." The resolution further consented to recordation of the 1947 quitclaim deed.

Harry Handlery died October 12, 1965, and Rose Handlery died October 6, 1970.

In June 2003, County wrote a letter to Handlery, Grantors' sole heir, requesting a meeting to discuss a "new vision" for the property. Then, following a phone request from Handlery for more information regarding this "new vision," County wrote a second letter in September 2003 explaining: "Our vision has as its primary focus the renovation and reconstruction of the existing fair facilities, and a continued commitment to keeping the fair in its current location." County also stated its belief that any reversionary interest Handlery's family may have held under the 1946 grant deed had expired, but that a cloud still existed on the property's title. County expressed hope the Handlery family would work cooperatively with it to clear the property's title by executing a grant or quitclaim deed, and also stated its intention to commemorate the Handlery family "in a very significant way in [the] new fair facilities."

In June 2004, County filed suit to quiet title to the property against Handlery in his capacity both as an individual and trustee of the Harry Handlery Irrevocable Trust, the Rose H. Handlery Irrevocable Trust dated December 27, 1968, and the Rose H. Handlery Revocable Trust dated January 20, 1970. Specifically, County sought a judicial determination that it is the sole owner in fee of the property and that Handlery has no interest in the property adverse to County.

In August 2004, Handlery filed a cross-complaint against County for declaratory relief, seeking a judicial declaration of the parties' rights and obligations with respect to the property. County then moved for summary judgment on its complaint to quiet title and for summary judgment or, in the alternative, summary adjudication, on Handlery's cross-complaint for declaratory relief.

On February 28, 2006, following a hearing, the trial court granted summary judgment in favor of County.[1] The trial court first determined that the only interest reserved by Grantors in the 1946 grant deed—the right of reverter or, as such right is now referred to under California law, the power of termination—had extinguished, either by surrender upon recordation of the 1947 quitclaim deed or by expiration due to the passage of time pursuant to Civil Code sections 885.030 and 885.060, subdivisions (a) and (b). The trial court then determined the use restrictions contained in the 1946 grant deed and 1947 quitclaim deed were personal covenants that had become legally unenforceable once Grantors died and the power of termination extinguished. In so concluding, the trial court rejected Handlery's argument that the use restrictions were enforceable as either equitable servitudes or obligations arising under charitable trust principles.[2] Finally, with respect to the cross-complaint for declaratory relief, the trial court determined Handlery had no standing to enforce the use restrictions because they were personal covenants enforceable only by the original parties.

Thus, the trial court ultimately concluded "County is entitled to have title quieted in fee simple absolute as to all adverse claims and interests, including unenforceable restrictions on use and alienation imposed by the original grantors who are now deceased." This appeal followed.

---

[1] The trial court treated the County's motion as one for summary judgment as to both the complaint and the cross-complaint after finding County failed to comply with certain statutory rules governing motions for summary adjudication. (Cal. Rules of Court, rule 342.)

[2] The trial court found the use restrictions were not enforceable as equitable servitudes because, while they undoubtedly burdened the property, they were not appurtenant to other benefited property. (*Marra v. Aetna Construction Co.* (1940) 15 Cal.2d 375 [101 P.2d 490].) The trial court further found the use restrictions were not enforceable under the charitable trust doctrine because no evidence existed that Grantors intended to create a charitable trust in conveying the property to County. (*City of Palm Springs v. Living Desert Reserve* (1999) 70 Cal.App.4th 613, 622 [82 Cal.Rptr.2d 859].) Rather, the evidence revealed an intent to convey a conditional gift in fee simple. Handlery does not directly challenge these two findings on appeal. Rather, Handlery argues the trial court had no reason to make the findings, because, as explained in more detail below, the restrictions were enforceable under the public trust doctrine.

## DISCUSSION

On appeal, Handlery contends the trial court erred by granting summary judgment in favor of County. Specifically, Handlery disputes the trial court's finding that the use restrictions in the 1946 grant deed and 1947 quitclaim deed are legally unenforceable.

A trial court's summary judgment rulings are subject to de novo review. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768–769 [107 Cal.Rptr.2d 617, 23 P.3d 1143]; *Barton v. Elexsys Internat.* (1998) 62 Cal.App.4th 1182, 1187 [73 Cal.Rptr.2d 212].) "In performing [the] de novo review, we must view the evidence in a light favorable to . . . the losing party [citation], liberally construing [his] evidentiary submission while strictly scrutinizing [the prevailing party's] own showing, and resolving any evidentiary doubts or ambiguities in [the losing party's] favor." (*Saelzler, supra*, 25 Cal.4th at pp. 768–769.)

The law of summary judgment provides courts with a mechanism to cut through the parties' pleadings to determine whether trial is in fact necessary to resolve their dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "If summary judgment was properly granted on any ground, we must affirm regardless of whether the court's reasoning was correct." (*Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1836 [20 Cal.Rptr.2d 913].)

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) To be entitled to judgment as a matter of law, the moving party must show by admissible evidence that the "action has no merit or that there is no [available] defense." (Code Civ. Proc., § 437c, subd. (a).)

A plaintiff meets this initial burden of showing that no defense exists to a cause of action by proving each element of the cause of action entitling the plaintiff to judgment. (Code Civ. Proc., § 437c, subd. (p)(1).) Once the plaintiff has met this burden, the burden shifts to the defendant to show that either a triable issue of one or more material facts or a defense exists as to that cause of action. (*Ibid.*)

A cross-defendant moving for summary judgment meets his or her initial burden of showing an action has no merit by proving that one or more elements of the cause of action cannot be established or that there is a complete defense to the action. (Code Civ. Proc., § 437c, subd. (p)(2); *Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 213–214 [51 Cal.Rptr.2d 642].) If the cross-defendant successfully makes this showing, the burden shifts to the cross-complainant to show that a triable issue of material fact or a defense exists as to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)

Applying these rules to this case, we consider whether County met its burden on summary judgment to show Handlery had no defense with respect to the complaint to quiet title to the property, and that one or more elements of the cause of action could not be established with respect to the cross-complaint for declaratory relief.

In deciding these questions, we, like the trial court, must determine the parties' rights and obligations with respect to the property. As such, we turn to the deeds at issue, and the rules governing their interpretation.

■ With deeds, as with all contracts, the primary object of interpretation is to ascertain and carry out the intention of the parties. (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238 [52 Cal.Rptr.2d 82, 914 P.2d 160]; *City and County of San Francisco v. Union Pacific R.R. Co.* (1996) 50 Cal.App.4th 987, 994 [58 Cal.Rptr.2d 1].) In achieving this purpose, we must keep in mind the following: A grant is to be construed in the same manner as contracts in general (Civ. Code, § 1066); the deed's language determines its interpretation so long as it is clear and explicit (Civ. Code, § 1638); and a grant is to be interpreted in favor of the grantee, except that a reservation in a grant is to be interpreted in favor of the grantor (Civ. Code, § 1069). Further, " '[e]xtrinsic evidence is "admissible to interpret the instrument, but not to give it a meaning to which it is not susceptible" [citations], and it is the instrument itself that must be given effect. [Citations.]' " (*City of Manhattan Beach v. Superior Court, supra*, 13 Cal.4th at p. 238.)

■ With respect to restrictions on the use of land conveyed in a deed, such restrictions "will not be read into a restrictive covenant by implication, but if the parties have expressed their intention to limit the use, that intention shall be carried out, for the primary object in construing restrictive covenants, as in construing all contracts, shall be to effectuate the legitimate desires of the covenanting parties." (*Hannula v. Hacienda Homes, Inc.* (1949) 34 Cal.2d 442, 444–445 [211 P.2d 302].)

" 'It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, "An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation]." [Citations.]' " (*City of Manhattan Beach v. Superior Court, supra,* 13 Cal.4th at p. 238.)

Here, we note as an initial matter the deeds subject to our interpretation, the 1946 grant deed and, in particular, the 1947 quitclaim deed, contain clear language of Grantors' intention at the time of conveyance to restrict use of the property to a specific purpose—"only for a county fair or exposition for Solano County and purposes incident thereto, which may include public parks, playground and/or recreational areas, and for such other purposes for which county fair grounds may be used."

Further, this use restriction on the property was specifically agreed to by County, the grantee. On June 13, 1947, County adopted a resolution accepting and consenting to recordation of the 1947 quitclaim deed of the property. The resolution provided that "said property is conveyed to said County as a gift for a County Fair site, and other uses, as in said quitclaim deed set forth." Thus, undisputedly, County accepted Grantors' dedication of the property to County as a gift for the public to be used exclusively as a county fair or exposition site.[3]

Our inquiry, however, does not end here. For, while acknowledging its acceptance in 1947 of the property subject to the use restrictions set forth in the quitclaim deed, County contends those use restrictions are no longer

---

[3] County does not dispute this case involves a dedication of property for a public purpose. Indeed, it would be difficult to conclude otherwise. " 'A dedication is a voluntary transfer of an interest in land and resembles both a grant and a gift. It is therefore governed by the fundamental principles which control such transactions. . . . The intention to dedicate land need not be expressly stated but can be inferred from the actions of the owner. [Citation.] There must also be an acceptance by the public of the offer to dedicate. [Citation.] Acceptance may be express or implied. [Citation.] Express acceptance occurs when formal acceptance is made by the proper authorities. [Citation.] . . .' [Citation.] Thus, '[a] dedication is said to have the characteristics of a contract, in that it requires both an offer and acceptance and is not binding until there has been an acceptance.' [Citation.]" (*Baldwin v. City of Los Angeles* (1999) 70 Cal.App.4th 819, 837 [83 Cal.Rptr.2d 178].) Here, the evidence supports the conclusion that Grantors dedicated the property to County as a gift for use by the public as a county fair or exposition, and that County thereafter expressly accepted the dedication when it adopted the June 13, 1947 resolution.

enforceable, either because Grantors quitclaimed their power of termination in the 1947 deed, or because Grantors have since died.[4] We disagree.

■ Under circumstances similar to those existing here, California courts have been loathe to cast aside use restrictions on property contained in deeds: " 'It is well settled that where a grant deed is for a specified, limited and definite purpose, the subject of the grant cannot be used for another and different purpose.' (*Roberts* v. *City of Palos Verdes Estates* [(1949)] 93 Cal.App.2d 545, 547 [209 P.2d 7]; *Griffith* v. *Department of Public Works* [(1956)] 141 Cal.App.2d 376, 380 [296 P.2d 838].)" (*Big Sur Properties v. Mott* (1976) 62 Cal.App.3d 99, 103 [132 Cal.Rptr. 835] (*Big Sur Properties*); see also *Save the Welwood Murray Memorial Library Com. v. City Council* (1989) 215 Cal.App.3d 1003, 1012 [263 Cal.Rptr. 896] (*Welwood Murray*).)

Likewise, California courts have often held that " '[w]here a tract of land is donated to a city with a restriction upon its use—as, for instance, when it is donated or dedicated solely for a park—the city cannot legally divert the use of such property to purposes inconsistent with the terms of the grant.' (*Spinks* v. *City of Los Angeles* [(1934)] 220 Cal. 366, 368 [31 P.2d 193]; *City and County of S.F.* v. *Linares* [(1940)] 16 Cal.2d 441, 446 [106 P.2d 369].)" (*Big Sur Properties*, *supra*, 62 Cal.App.3d at p. 103; see *Baldwin v. City of Los Angeles*, *supra*, 70 Cal.App.4th 819, 836–837; see also *Slavich v. Hamilton* (1927) 201 Cal. 299, 302 [257 P. 60] ["land which has been dedicated as a public park must be used in conformity with the terms of the dedication, and it is without the power of a municipality to divert or withdraw the land from use for park purposes"]; *Marshall v. Standard Oil Co.* (1936) 17 Cal.App.2d 19, 29 [61 P.2d 520] ["the acceptance of a deed containing a covenant on the part of a grantee is equivalent to an agreement on the part of a grantee to perform the same"].)

■ Further, where, as here, property is acquired by a public entity through private dedication, the deed is strictly construed. (*Big Sur Properties*, *supra*, 62 Cal.App.3d at p. 104; *Griffith v. Department of Public Works, supra*, 141 Cal.App.2d at p. 380.) As several California courts have observed: " 'Courts have guarded zealously the restrictive covenants in donations of

---

[4] As mentioned above, the 1946 grant deed expressly provided that, in the event of a breach of any condition, restriction or covenant in the deed, the property "shall immediately revert to the Grantors herein, their heirs, successors, administrators and assigns, and no public use or interest therein shall be deemed to have been acquired so as to divert or render ineffective said reversion . . . ." This language, which is now construed as a power of termination (Civ. Code, § 885.010), was omitted from the 1947 quitclaim deed.

property for public use. . . ." (*Big Sur Properties, supra*, 62 Cal.App.3d at p. 104, fn. omitted; see *Welwood Murray, supra*, 215 Cal.App.3d at p. 1013; *Roberts v. City of Palos Verdes Estates, supra*, 93 Cal.App.2d at p. 548.) In fact, where property has been donated for public use, some courts have concluded such property "is held upon what is loosely referred to as a 'public trust,' and any attempt to divert the use of the property from its dedicated purposes or uses incidental thereto is an ultra vires act. (*City of Hermosa Beach* [*v. Superior Court* (1964)] 231 Cal.App.2d [295,] 299–300 [41 Cal.Rptr. 796].)" (*Big Sur Properties, supra*, 62 Cal.App.3d at p. 104.)[5]

County claims this so-called public trust doctrine applies only to property, unlike the property at issue here, that contains tidelands. We conclude a line of California appellate decisions proves otherwise. For example, in *Welwood Murray*, the desert city of Palm Springs acquired property by two grant deeds executed by private donors that restricted use of the property in perpetuity to a public library. (*Welwood Murray, supra*, 215 Cal.App.3d at pp. 1006–1007.) In affirming an order enjoining the City from using the property for purposes other than those related to a public library, the Court of Appeal, Fourth District, Division Two, applied the public trust doctrine: "A public trust is created when property is held by a public entity for the benefit of the general public. (See *Big Sur Properties v. Mott, supra*, 62 Cal.App.3d 99, 104; 89 C.J.S., Trusts, § 19.) Here, title to the library property is held by City to be used by City for the benefit of the general public as a public library. Any attempt to divert the use of the property from its dedicated purposes or uses incidental thereto would constitute an ultra vires act. (*Big Sur Properties v. Mott, supra*, 62 Cal.App.3d at p. 99.) [¶] Thus, it would be proper not only to issue an injunction to enforce the obligation arising from the existence of the public trust, i.e., to enforce City's obligation to use the property as a public library, but also to prevent an ultra vires, and hence nonlegislative, act. (See

---

[5] While "loosely referr[ing]" to such dedicated property as a "public trust," the case law has made clear that "such a public trust is no more a true charitable trust than was Grover Cleveland's in his expression 'a public office is a public trust.' " (*City of Hermosa Beach v. Superior Court, supra*, 231 Cal.App.2d at p. 299.) " 'The language of statutes, courts, and text-writers on this question is generally that of trust. They call the municipality a trustee of the dedicated land. But it is believed that in fact most of the decisions enforce the dedication on theories other than those of trust and that there is really no trust. . . . [¶] . . . The prevalent and sound theory seems to be that such actions are either based on compelling the municipal corporation to perform its governmental functions or on the theory of a private property right of a nontrust character. It is believed that the statement that property dedicated to a municipal use by statutory proceedings is held in trust by the municipality for a special purpose and for the benefit of the public is a loose expression, not designed to mean that a strict or true trust exists, but merely that the municipality owes the public a duty to employ the property in a certain way and that the members of the public can proceed in equity to compel the municipality to live up to this part of its governmental obligations.' (1 Bogert, Trusts and Trustees, § 34.)" (*City of Hermosa Beach v. Superior Court, supra*, 231 Cal.App.2d at pp. 298–299.)

*ibid.*; see also *Pughe* v. *Lyle* (D.C.Cal. 1935) 10 F.Supp. 245, 248 . . . .)"
(*Welwood Murray, supra*, 215 Cal.App.3d at p. 1017, citations omitted.)

Similarly, while the courts in both *Big Sur Properties* and *Roberts v. City of Palos Verdes Estates, supra*, 93 Cal.App.2d 545 (*Roberts*), were undoubtedly concerned with "guard[ing] zealously" restrictive covenants in donations of property for public use—the same concern at the heart of what courts have "loosely" labeled the public trust doctrine (e.g., *Welwood Murray, supra*, 215 Cal.App.3d at p. 1017)—neither court used any language suggesting its concern was limited to the preservation of tidelands. Rather, both courts expressed concern for protecting donations of property for public parks, which, in the case of *Roberts*, was " 'being used as a golf course.' " (*Roberts, supra*, 93 Cal.App.2d at pp. 547–548; see *Big Sur Properties, supra*, 62 Cal.App.3d at pp. 101, 104.)

Moreover, the public policy concerns behind California's protective treatment of restrictive covenants or conditions in donations of property for public use are implicated regardless of whether the property at issue contains tidelands. For example, one such concern is that if courts were to permit public entities to accept from donors gifts of property subject to restrictions on the property's use, and then later jettison those restrictions on their own whim, donors would be discouraged from making such gifts in the future. (*Welwood Murray, supra*, 215 Cal.App.3d at p. 1014; *Big Sur Properties, supra*, 62 Cal.App.3d at p. 105; *City of Palm Springs v. Living Desert Reserve, supra*, 70 Cal.App.4th 613, 628.) Such concern is valid regardless of the nature of the donated property.

A second public policy concern is rooted in "the maxim[] of equity . . . that '[h]e who takes the benefit must bear the burden.' (Civ. Code, § 3521.) In this context, that means that the donee of a conditional gift may not keep the gift unless the donee complies with the donor's conditions. That the donee in this case is a public entity, endowed with the power of eminent domain, does not exempt it from that rule. To the contrary, public entities should exemplify equitable conduct. 'A public office is a public trust created in the interest and for the benefit of the people.' [Citation.]" (*City of Palm Springs v. Living Desert Reserve, supra*, 70 Cal.App.4th at p. 630.) Again, within the context of this public policy concern, the exact nature of the property is irrelevant. What is relevant is a public entity's heightened duty to act equitably when it accepts a conditional gift from a donor for the public's benefit.

Moreover, although we are not concerned here with tidelands, we conclude these public policy concerns are indeed implicated in this case. First, were we to allow County to avoid the use restrictions on the property set forth in the 1947 quitclaim deed—despite having expressly agreed to those restrictions upon accepting the property gift—we would no doubt discourage future such gifts from other donors. Second, we would permit County to accept a benefit without the corresponding burden, in clear violation of its duty as a public entity to "exemplify equitable conduct." (*City of Palm Springs v. Living Desert Reserve, supra*, 70 Cal.App.4th at p. 630.)[6] To avoid these results, we thus rely on the loosely termed public trust doctrine in adopting a reasonable interpretation of the 1947 quitclaim deed that precludes County from unilaterally casting aside the use restrictions contained in that deed that it expressly agreed to in the June 13, 1947 resolution. (See *Big Sur Properties, supra*, 62 Cal.App.3d at p. 105 [declining to interpret regulations in a manner that would "defeat the public trust doctrine" where "another construction is possible"].)

In reaching this conclusion, we acknowledge the absence of language in the 1947 quitclaim deed restricting use of the property "forever" or "in perpetuity." Nonetheless, strictly construing the 1947 quitclaim deed, as the law requires (*Big Sur Properties, supra*, 62 Cal.App.3d at p. 104; *Griffith v.*

---

[6] Despite the decision's language regarding a public entity's equitable duty to comply with a donor's condition limiting the use of donated property, County argues *City of Palm Springs v. Living Desert Reserve, supra*, 70 Cal.App.4th 613, in fact supports its position that the use restrictions in the 1947 quitclaim deed are unenforceable. In so arguing, County points to dicta in that decision that the transferee of property conveyed in fee simple subject to a condition subsequent "has no enforceable duties. The breach of the condition may result in the termination of the transferee's interest, but it does not subject the transferee to actions for damages or to enforce the condition." (*City of Palm Springs v. Living Desert Reserve, supra*, 70 Cal.App.4th at p. 621.) We find County's argument misplaced. Aside from the decision's equitable duty language, which we find persuasive and thus cite above, *City of Palm Springs v. Living Desert Reserve* is largely inapposite. There, the court considered the compensability of a power of termination in a deed to property donated for a particular public use where the public entity had used its power of eminent domain to eliminate the power of termination. (70 Cal.App.4th at p. 630.) That court did not consider the enforceability of use restrictions set forth in a deed, like the one at issue here, that undisputedly provides for no power of termination. And in particular, that court did not consider, as we do here, the enforceability of use restrictions under the so-called public trust doctrine. (*Ibid.*) Moreover, as set forth above, courts that have considered this question have concluded the restrictions are in fact enforceable. (E.g., *Welwood Murray, supra*, 215 Cal.App.3d at p. 1017; *City of Hermosa Beach v. Superior Court, supra*, 231 Cal.App.2d at pp. 298, 297 ["the courts have consistently permitted private parties to maintain suits to enforce . . . public rights" where "land is 'held in trust for the public' or . . . a 'public trust' is created"]; see also *Griffith v. Department of Public Works, supra*, 141 Cal.App.2d at p. 381 [reversing with instructions to overrule demurrer where plaintiff sought injunctive and declaratory relief based on city's alleged violation of use restrictions set forth in a deed to property executed by plaintiff's parents].)

*Department of Public Works, supra,* 141 Cal.App.2d at p. 380), we do not find this absence of language dispositive. (See also *City of Manhattan Beach v. Superior Court, supra,* 13 Cal.4th at p. 238 ["[i]t is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence"].) The 1947 quitclaim deed not only provides that the property shall be used "only" for purposes of a county fair or exposition, it also provides the property "shall not be sold, assigned, or transferred by said County," and permits County to "grant rights of way for sewer, power and other utility purposes." The 1947 quitclaim deed contains no clause providing for expiration of these use and transfer restrictions upon a certain date or occurrence, such as upon Grantors' deaths. By limiting County's use of the property *and* precluding it from ever selling, assigning or transferring the property—terms without expiration and expressly agreed to by County—we conclude the original parties to the deed intended the use restrictions to permanently continue in effect for the benefit of the public, at least until such time as they become obsolete or otherwise unjustified. (See, e.g., 3 Miller & Starr, Cal. Real Estate (3d ed. 2000) ch. 9, Estates, Restraints, Perpetuities, § 9:39, p. 62.) Further, as Grantors' successor in interest, we conclude Handlery has standing to enforce those restrictions.[7]

■ We also note that Grantors, Handlery as their successor in interest, and County as grantee have all continued to honor the use restrictions in the 1946 grant deed and 1947 quitclaim deed. It appears undisputed the property has been used by County as a county fairground, consistent with the terms of the 1946 grant deed and 1947 quitclaim deed, for nearly 60 years. And in 2003, County expressed to Handlery its "continued commitment to keeping the fair in its current location." Such evidence further buttresses our conclusion that County should not now be permitted to unilaterally disregard the use restrictions set forth in the deeds exclusively for the public's benefit.[8] (*City of Manhattan Beach v. Superior Court, supra,* 13 Cal.4th at p. 246 [" 'It is well settled that a deed indefinite in its terms may be made certain by the conduct

---

[7] We need not decide here whether any other individual would have standing to enforce these use restrictions.

[8] County correctly points out the 1946 grant deed expressly provides that the conditions, restrictions and reservations contained therein "are to run with the land." The 1947 quitclaim deed, to the contrary, contains no such language. We do not find this omission in the 1947 quitclaim deed dispositive, particularly where County not only took possession of the property with knowledge of the use restrictions, but also expressly accepted those restrictions in its June 13, 1947 resolution. Moreover, for the reasons set forth above, and in particular in light of our obligation to strictly construe deeds that effectuate donations of property for public use, we conclude other language in the 1947 quitclaim deed, as well as the subsequent conduct of the parties acting under it, evidence an intent that the use restrictions continue in effect after the death of Grantors.

of the parties acting under it. [Citations.]' [Citation.] In this regard, '[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.]' "].)

Finally, we note County devotes much attention in its brief to the argument that a fee simple absolute was conveyed in the 1947 quitclaim deed, and thus that the use restrictions contained therein were mere personal covenants unenforceable by anyone other than the original parties rather than covenants running with the land. In so arguing, County focuses exclusively on what have been described by our Supreme Court as " 'complex and archaic' " concepts of American property law (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 348 [47 Cal.Rptr.2d 898, 906 P.2d 1314]), and ignores the important public policies underlying our property law—particularly those policies set forth above that apply to public entities that receive gifts of property for public use. (E.g., *Welwood Murray, supra,* 215 Cal.App.3d at p. 1014; *Big Sur Properties, supra,* 62 Cal.App.3d at p. 105; *City of Palm Springs v. Living Desert Reserve, supra,* 70 Cal.App.4th at p. 628.) In doing so, we conclude County has missed the mark. Even assuming County owns the property as a fee simple absolute, such fact would not affect our conclusion that a triable issue remains whether County, in accepting the terms of the 1947 quitclaim deed, assumed a trust-like obligation not to divert use of the property from its dedicated purpose. (*City of Hermosa Beach v. Superior Court, supra,* 231 Cal.App.2d at pp. 299–300 [denying writ of prohibition where city sought to prohibit further prosecution of a suit to enforce use restrictions in a deed for property donated for public use]; *Griffith v. Department of Public Works, supra,* 141 Cal.App.2d at p. 381 [reversing with instructions to overrule demurrer where grantors' son sought to enforce use restrictions in a deed for property donated for public use].) As this court stated many years ago in an opinion by Justice Mosk, quoting an earlier New York case: " 'The title conferred upon this public agent is wholly for public purposes. The [public entity] has neither the right nor the power to apply any such property to other than public uses and those included within the objects of the grant. . . . Whatever estate or interest it holds . . . is in trust for the public use.' " (*Marshall v. Standard Oil Co., supra,* 17 Cal.App.2d at p. 27.)

■ Accordingly, for the reasons stated, we conclude triable issues of material fact exist regarding the parties' interests, rights and obligations with respect to the property dedicated by Grantors for the exclusive use by the public as a county fair or exposition.

## DISPOSITION

The order granting summary judgment in County's favor is reversed.

McGuiness, P. J., and Siggins, J., concurred.

A petition for a rehearing was denied October 10, 2007, and respondent's petiton for review by the Supreme Court was denied December 12, 2007, S157734.