Filed 3/18/13  Albert Park Neighborhood Alliance v. City of San Rafael CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALBERT PARK NEIGHBORHOOD ALLIANCE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN RAFAEL et al.,<br><br>        Defendants and Respondents;<br><br>CENTERFIELD PARTNERS, LLC,<br><br>        Real Party in Interest and Respondent. | A135028<br><br>(Marin County<br> Super. Ct. No. CIV-1105491) |

        The present controversy concerns the validity of an agreement whereby respondent City of San Rafael (the City) granted respondent Centerfield Partners, LLC (Centerfield) the right to use an existing baseball field and stadium in Albert Park in San Rafael, as a facility to host North American League professional baseball games (the Agreement).  In this appeal plaintiff claims the trial court erred by finding that the Agreement does not violate the restrictive terms of a grant deed by which Albert Park was conveyed to the City.  We conclude that no error was committed, and affirm the judgment.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

        In May of 1937, Jacob and Annie Albert donated real property located in downtown San Rafael, now known as Albert Park, to the City by grant deed expressly to "contribute to the welfare of the people of San Rafael, to increase the City's ownership of

public parks and playgrounds," and to "afford the residents of said City a public park for recreational and playground uses." The property was conveyed to the City subject to specified uses, restrictions, conditions and reservations: the property must remain part of the City's "public parks system," managed and controlled by the Parks Commission or an equivalent body or agency in the City; subject to reasonable regulations provided by the Parks Commission or other agency, the property "shall be maintained in perpetuity for the free use and enjoyment" of the public; and, the commission or other agency in control of the property is vested with the power, "in its absolute discretion, to rent the whole or any portion of said real property for compensation for periods not exceeding one (1) week in duration for such purposes as said commission may deem proper;" the land cannot be leased "except as provided" in the grant deed.

Following the conveyance of the property to the City, the "Albert Park Baseball Stadium" and field were installed "in the early 1950's to host a semi-professional baseball team." The facilities evolved to include stadium seating for 700, locker rooms, dugouts, a batting cage, field lights, a press box and public address system, fencing, and a concession stand. Historically, the park has been used for professional, semiprofessional, high school, Little League, and recreational baseball, along with other outdoor community events, on nearly all weeknights and weekends during the summer season. The baseball park is available for hourly rental at a graduated fee schedule by youth and nonprofit organizations, schools, Little League, private parties, recreational softball and baseball leagues, commercial and for-profit entities. From 1997 to 2002, the San Francisco Seals Collegiate Baseball team rented the baseball park to play an average of 30 games per year on weeknights and Sundays.[1]

In April of 2011, Centerfield submitted a proposal and permit application to use Albert Park for the home games of an independent, professional baseball team in the North American Baseball League, called the San Rafael Pacifics. The North American

---

[1] Other public recreational facilities are also available for use at Albert Park: tennis courts, picnic tables, barbeques, volleyball courts, bocce courts, a children's play area and center, and a community center.

Baseball League was formed to operate as a nationwide, independent, professional minor league, unaffiliated with any major league teams, to play a 45-game home schedule on weeknights and Sunday afternoons between the third week of May and early September. Centerfield owns the exclusive San Francisco Bay Area territorial rights to enter the newly formed team in the North American Baseball League. The application submitted to the City sought a three-year use permit, coupled with an offer by Centerfield to improve the baseball facilities. Thus, the Municipal Code required both a permit and an agreement between the City and Centerfield.

After the City Staff determined that the proposal by Centerfield was feasible, a draft of the proposal was sent to the City Park and Recreation Commission (the Commission) for review. The Commission held public meetings on April 28, and May 19, 2011. The conclusion of the Commission following consideration of the draft proposal at the meetings and further input from Staff was that only a use permit was required, and the contemplated use by Centerfield was consistent with the historical and current use of the Albert Park baseball field. The Commission voted unanimously to recommend the proposal to the City Council.

The City Staff and Centerfield pursued implementation plans to address concerns with traffic, parking, security, noise, and other issues. The City Staff also considered the applicability of the California Environmental Quality Act (CEQA) to Centerfield's draft proposal, which included the installation of additional temporary seating for an anticipated average attendance of approximately 1,500 spectators for each of the 45 games. The Staff determined that the proposed project would not require compliance with CEQA, under the "Class 23" categorical exemption for "normal operations of existing facilities for public gatherings for which the facilities were designed, where there is a past history of the facility being used for the same or similar kind of purpose."

Following additional public meetings and comments in August and September of 2011, Centerfield submitted a revised application for a use agreement, which modified prior draft proposals in several particulars to address previously expressed concerns: a one-year nonexclusive lease beginning September 30, 2012, to use the baseball park to

3

play 45 regular season games between late May and September; games would be scheduled after the conclusion of most youth and high school baseball leagues; free parking would be provided for up to 609 cars at the nearby San Rafael Corporate Center; Centerfield would monitor efficient entry of cars on the street and into the parking lot, and provide crosswalk and sidewalk safety measures; games would begin at designated times, and the existing public address system would not be used to play amplified music after 9:00 p.m.; a maximum of 100 temporary field-level chairs, rather than 800 bleacher seats, would be added to the existing 700 stadium seats; alcohol consumption would be monitored by prohibiting entry into the park with alcohol, selling no more than two beverages to each person, and eliminating alcohol sales "at the end of the 7th inning or 10:00 p.m., which ever comes first;" a temporary concession stand would be used at a site consistent with prior use; a local firm would be retained to provide security both inside and outside the stadium, and in the designated parking lot. The final proposal also called for Centerfield to perform safety and cosmetic improvements in Albert Park in the nature of a new backstop, and new field-level protective fencing, along with painting, cleaning and renovating the grandstand, locker rooms and bathrooms. In accordance with the City's existing master fee schedule for Albert Park, Centerfield agreed to pay the City $80 hourly rental fee for use of the baseball field, and an additional $40 for every hour the lights are activated, less $5,000 in annual fee credits for permanent improvements made to the baseball park.

The City Council considered the modified final proposal and agreement at a public meeting on September 19, 2011. The City Attorney offered the conclusion that the proposed use was consistent with the restrictions in the Albert Park deed. At the conclusion of the meeting the City Council unanimously approved the proposal and directed the City Staff to prepare a final agreement with Centerfield for approval.

The final Agreement was considered at a meeting of the City Council on October 3, 2011. The City Council adopted Resolution No. 13248, that found the proposal would not represent a change in the normal use of Albert Park, and was thus exempt from CEQA environmental review. The Resolution directed the City Manager to execute the

4

Agreement with Centerfield for the use of Albert Park as a baseball field for professional baseball in accordance with the final proposal.

This action was commenced with a petition for writ of mandate (Code Civ. Proc., §§ 1085, 1094.5), along with a complaint for declaratory and injunctive relief based on violation of CEQA (Pub. Resources Code, § 21000 et seq.), filed by plaintiff on November 7, 2011. The essential claims in the petition and complaint are that the Agreement between Centerfield and the City requires compliance with CEQA, violates the City's General Plan, and violates the terms of the grant of the Albert Park property to the City. Following the certification of the administrative record, the case proceeded to trial before the court. The trial court found substantial evidence in the record to support the City's determination that the proposal would not alter normal operations of existing facilities or produce a " 'significant effect on the environment' within the meaning of CEQA." The court further found that the proposal is consistent with the City's General Plan, and does not violate the terms of the 1937 Albert Park deed. The petition for writ of mandate and complaint for declaratory and injunctive relief was denied in its entirety. This appeal followed.

**DISCUSSION**

Plaintiff argues in this appeal only that the proposed use of Albert Park by Centerfield fails to comply the terms of the 1937 grant deed by which Annie and Albert Jacob conveyed the property to the City. Plaintiff's position is that the City's Agreement with Centerfield contravenes the terms and intent of the grant deed in essentially two ways: first, by violating the provision in the deed that requires Albert Park to be maintained for the free use and enjoyment of the public for recreational purposes; and second, by renting the park to Centerfield for a duration greater than one week in contravention of the specific time limitation stated in the deed.

5

*I. Plaintiff's Standing to Claim Violation of the Grant Deed*.

We first confront respondents' claim that plaintiff lacks standing to pursue the issue of lack of compliance with the grant deed in this mandamus proceeding.[2] The City maintains that plaintiff has not demonstrated the requisite "beneficial interest" in the litigation beyond the "general interest" held in common with the "public residing in the vicinity of Albert Park."

According to well-established law, "only parties with standing may pursue a mandamus action. A writ of mandate 'must be issued upon the verified petition of the party beneficially interested.' (Code Civ. Proc., § 1086.) 'This provision has been held to establish a standing requirement—the writ will issue only at the request of one who is beneficially interested in the subject matter of the action. [Citation.]' [Citation.]" (*Lindelli v. Town of San Anselmo* (2003) 111 Cal.App.4th 1099, 1106–1107 (*Lindelli*).) "Code of Civil Procedure section 367 imposes a similar requirement for civil actions generally, stating: 'Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.' 'A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law.' [Citation.]" (*Personnel Com. v. Barstow Unified School Dist*. (1996) 43 Cal.App.4th 871, 877.) " 'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. . . .' [Citation.]" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165; see also *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1085–1086; *Regency Outdoor Advertising, Inc. v. City of West Hollywood* (2007) 153 Cal.App.4th 825, 829.) "This standard," the California Supreme court has "stated, 'is equivalent to the federal "injury in fact" test, which requires a party to prove by a preponderance of the evidence that it

---

[2] The City did not raise the standing issue in the trial court. However, a litigant's standing to sue is a threshold issue that may be raised at any time in the proceedings, even without an objection below. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com*. (1999) 21 Cal.4th 352, 361; *Hernandez v. Atlantic Finance Co*. (1980) 105 Cal.App.3d 65, 71.)

has suffered "an invasion of a legally protected interest that is [both] '(a) concrete and particularized, and (b) actual or imminent . . . .' " ' [Citation.]" (*People ex rel. Dept. of Conservation v. El Dorado County* (2005) 36 Cal.4th 971, 986.) " 'The petitioner's interest in the outcome of the proceedings must be substantial, i.e., a writ will not issue to enforce a technical, abstract or moot right. [Citation.] The petitioner also must show his legal rights are injuriously affected by the action being challenged. [Citation.]' [Citation.]" (*Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1251 (*Marshall*).) The beneficial interest must be direct and substantial. (*Parker v. Bowron* (1953) 40 Cal.2d 344, 351; *Lindelli, supra,* 111 Cal.App.4th 1099, 1106–1107; *Braude v. City of Los Angeles* (1990) 226 Cal.App.3d 83, 87.)

Plaintiff is an unincorporated community association that has asserted an interest on behalf of those situated in the neighborhood of Albert Park, whose use and enjoyment of the area is distinctively affected by the City's alleged failure to comply with CEQA, the City's General Plan, the Municipal Code, and the grant deed restrictions. In this appeal, the only action challenged is compliance with the authorized uses and restrictions stated in the Albert Park deed. Those in geographic proximity to Albert Park may be more keenly disturbed than the public at large by the schedule of baseball games authorized by the Agreement, particularly by noise and congestion impacts.

Further, "our Supreme Court has recognized an exception to this general rule. ' " '[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced.' " [Citation.] The exception promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right. . . .' [Citations.]" (*Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1564.) Under the "public interest standing" exception to the requirement of a beneficial interest: " ' "One who is in fact adversely affected by governmental action should have standing to challenge that action if it is judicially

7

reviewable." [Citation.]' [Citation.]" (*Save the Plastic Bag Coalition v. City of Manhattan Beach, supra,* 52 Cal.4th 155, 165.) "These liberal standing requirements have been applied to individuals acting in the public interest to protect against effects of environmental abuse." (*Laidlaw Environmental Services, Inc., Local Assessment Com. v. County of Kern* (1996) 44 Cal.App.4th 346, 354.)

Plaintiff, as an association of individual citizens, is seeking to secure enforcement of a duty by the City to adhere to the terms of the 1937 Albert Park grant deed, which restricts the sanctioned use of the land to benefit the public interest. Plaintiff, on behalf of its individual citizen-members, has also asserted a beneficial interest in the subject matter of the government action and participated in the public administrative proceedings that resulted in the decision challenged here. (See *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 128–129 (*Apartment Assn.*).) Plaintiff's action thus falls within the rule that grants standing to a party who asserts a public interest and seeks enforcement of a public duty by writ of mandate. (*Green v. Obledo* (1981) 29 Cal.3d 126, 144; *Marshall, supra,* 119 Cal.App.4th 1241, 1250–1252; *County of L. A. v. Tax Appeals Bd. No. 2* (1968) 267 Cal.App.2d 830, 834.)

Finding that plaintiff has standing, we proceed to the merits of our review. (*Apartment Assn., supra,* 136 Cal.App.4th 119, 129.) "A traditional writ of mandate under Code of Civil Procedure section 1085 is a method for compelling a city to perform a legal, usually ministerial duty. [Citation.] When a court reviews an administrative decision pursuant to Code of Civil Procedure section 1085, it merely asks whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, or whether the agency failed to follow the procedure and give the notices the law requires. [Citation.] In reviewing a trial court's judgment on a petition for writ of ordinary mandate, we apply the substantial evidence test to the trial court's factual findings. However, we exercise our independent judgment on legal issues . . . ." (*Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 52–53; see also *Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129; *International Federation of*

*Professional & Technical Engineers v. City and County of San Francisco* (1999) 76 Cal.App.4th 213, 224.)

## II. The Compliance with the "Free-use" Provision in the Grant Deed.

Plaintiff asserts that the Agreement violates the provision in the 1937 Albert Park grant deed that requires the land to be "maintained in perpetuity for the *free use and enjoyment* of the public in said City." Plaintiff submits that "free" means "not costing or charging anything," so "[a]llowing Centerfield the use of the Albert Park baseball field and stadium far in excess of one week in duration and charging an entrance fee for games played during that prolonged period does not meet the more exacting standard in the Grant Deed requiring the City to maintain the land in perpetuity for free use and enjoyment of the public." Plaintiff's proposed meaning of the term "free use and enjoyment of the public" is that "the public must be simultaneously 'employing' the park and be in 'possession' of the land without costing the public or charging the public anything for this benefit the Grant Deed intended in perpetuity."[3]

To resolve plaintiff's contentions related to the uses of Albert Park authorized by the grant deed, we must interpret the terms of the document. "With deeds, as with all contracts, the primary object of interpretation is to ascertain and carry out the intention of the parties. [Citations.] In achieving this purpose, we must keep in mind the following: A grant is to be construed in the same manner as contracts in general (Civ. Code, § 1066); the deed's language determines its interpretation so long as it is clear and explicit (Civ. Code, § 1638); and a grant is to be interpreted in favor of the grantee, except that a reservation in a grant is to be interpreted in favor of the grantor (Civ. Code, § 1069)." (*County of Solano v. Handlery* (2007) 155 Cal.App.4th 566, 573.)

"In a deed, as in any contract, we attempt to ascertain the intent of the parties by first looking to the language in the deed, as construed in light of any extrinsic evidence which may prove a meaning to which the language of the instrument is reasonably

[3] Although plaintiff failed to specifically present the "free use" argument in the trial court, we find no forfeiture of the issue on appeal. We address and resolve this claim as one within the issues framed by the complaint and plaintiff's challenge to the City's compliance with the Albert Park grant deed.

susceptible." (*City and County of San Francisco v. Union Pacific R.R. Co.* (1996) 50 Cal.App.4th 987, 994; see also *Thorstrom v. Thorstrom* (2011) 196 Cal.App.4th 1406, 1416.) "The real question always is, therefore, whether the use in a particular case, and for a designated purpose, is consistent or inconsistent with such primary object. Whether or not a particular use amounts to a diversion from that for which the dedication was made depends on the circumstances of the dedication and the intention of the party making it." (*Wattson v. Eldridge* (1929) 207 Cal. 314, 320.) "With respect to restrictions on the use of land conveyed in a deed, such restrictions 'will not be read into a restrictive covenant by implication, but if the parties have expressed their intention to limit the use, that intention shall be carried out, for the primary object in construing restrictive covenants, as in construing all contracts, shall be to effectuate the legitimate desires of the covenanting parties.' [Citation.]" (*County of Solano v. Handlery, supra,* 155 Cal.App.4th 566, 573.)

"'The interpretation of a written instrument, even though it involves what might properly be called questions of fact . . . is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect.' [Citation.] An appellate court reviews such instruments independently, 'unless the interpretation turns upon the credibility of extrinsic evidence.' [Citations.]" (*PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 144–145; see also *Gray v. McCormick* (2008) 167 Cal.App.4th 1019, 1024; *Harvey v. The Landing Homeowners Assn.* (2008) 162 Cal.App.4th 809, 817.)

We agree with plaintiff that pursuant to the explicit terms of the grant deed, the City cannot authorize or grant use of Albert Park for purposes inconsistent with the recreational purpose of the conveyance. We also observe the obvious: both playing and watching baseball are uses that are eminently consistent with the primary directive of the grant deed to promote public recreation.

Contrary to plaintiff's contention, we conclude that the term "free use" in the grant deed does not have a pecuniary reference. We do not believe the grantors intended to preclude the City from ever charging the public for use of the Albert Park to conduct

10

recreational activities. If that was the case, an illogical and unreasonable consequence would result. Lack of any recompense fee for use of the park would quite rapidly force the City to curtail or eliminate many if not all activities for lack of monetary support to maintain and improve the facilities. We must interpret the grant deed "in a manner that is reasonable and does not lead to an absurd result. [Citation.] This principle is codified in Civil Code section 1638, which provides: 'The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.' " (*Roden v. AmerisourceBergen Corp.* (2010) 186 Cal.App.4th 620, 651.) The absurd result of requiring all activities in the park to be free of charge is to be avoided. (See *In re Greg F.* (2012) 55 Cal.4th 393, 410; *Galardi Group Franchise & Leasing, LLC v. City of El Cajon* (2011) 196 Cal.App.4th 280, 288; *In re Samano* (1995) 31 Cal.App.4th 984, 989.)

We must also interpret the free-use term of the Agreement together with the immediately preceding provision, which expressly subjects the "free use and enjoyment" of the property by the public to "all reasonable regulations provided" by the Park Commission or other entity "having the management and control of said real property." "To the extent practicable, the meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless." (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027.) Interpreting the two related provisions together, as we must, persuades us to find that the term "free" means without undue controls or excessive directives, rather than without cost. The City is thus granted the power to regulate the use of the property by the public to the extent reasonably necessary. Corroboration for this interpretation is found in both common sense and the history of use of the park. For years, the City has regularly charged for many recreational activities in Albert Park, including fees for baseball and softball leagues in which residents participated. Therefore, the fact that spectators are charged for attending the professional games played at the park does not contravene the terms of the grant deed.

11

### III. The Prohibition Against Rent of the Property for More Than One Week.

Plaintiff also argues that the Agreement fails to comply with the provision which grants to the City's commission the "power" to "rent the whole or any portion of said real property for compensation for periods not exceeding one (1) week in duration for such purposes as said commission may deem proper together with the power to provide either with or without compensation the use of said real property for public exhibitions, concerts or other enterprises conducted by any non-profit fraternal or charitable organization within said City for charitable and civic purposes." Plaintiff claims the "plain language of this restriction states that the City has full discretion to rent the land for compensation for any purpose it 'deems proper' but only for a week duration." Plaintiff points out that the separate, "additional power" granted to the City to provide for use of the property for specified purposes to specified groups – essentially charitable or civic activities conducted by nonprofit or charitable groups – without a time limitation, is indicative of an intent to treat rental agreements with "for profit" groups like Centerfield differently by imposing a one-week time limit. Plaintiff thus maintains that "the use restrictions on the land contained in the Grant Deed clearly did not contemplate the sustained use of the land for periods of months during a calendar year for a minor-league for-profit baseball team."

While a continuous and exclusive lease of the Albert Park baseball facilities for more than one week might breach the grant deed, the Agreement is of an entirely different nature. Centerfield does not occupy, possess or even use the premises continuously. Centerfield has been granted a license or permit for intermittent use of the park that terminates at the conclusion of each baseball game, rather than a unremitting rental agreement of any kind that exceeds a week. The use granted to Centerfield is also far from exclusive. Others may use the baseball field when the San Rafael Pacifics team is not playing its games, and the rest of the park is always open to the public. The Agreement gives Centerfield the right to use and occupy the baseball facilities for designated games, not sole possession of the park to the exclusion of the rest of the public, as would a leasehold interest. (See *Kaiser Co. v. Reid* (1947) 30 Cal.2d 610, 619;

*McCaslin v. De Camp* (1967) 248 Cal.App.2d 13, 18–19.) The Agreement is not in substance any different than the permits that have been granted to other groups and baseball leagues to use the park facilities for games during their seasons – which also exceed one week in duration. In addition, the Agreement lacks yet another fundamental attribute of a lease: the payment of rent for a sustained period. (See *San Jose Parking, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1321, 1328.) Under the Agreement Centerfield pays for use of the park by the hour, with an additional fee for use of the lights, also by the hour. The use fee, like the use of the park, terminates at the conclusion of each game. We conclude that the City's Agreement with Centerfield does not constitute an impermissible rental of the park for more than one week. Instead, a license or use permit has been granted for multiple, separate games of less duration, which does not violate the grant deed. In all respects, the Agreement complies with the 1937 grant deed.

Accordingly, the judgment is affirmed.


_____
Dondero, J.


We concur:


_____
Margulies, Acting P. J.

_____
Banke, J.

13